UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

| Present: The Honorable | **Fernando M. Olguin, United States District Judge** |
|---|---|
| Vanessa Figueroa | None |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings: (In Chambers) Order Re: Pending Motions**

On September 29, 2011, plaintiff Jay Russell Shafer ("plaintiff"), filed a Complaint against the County of Santa Barbara; Bill Brown ("Brown"), individually and as Sheriff of Santa Barbara County; the Santa Barbara Sheriffs Department; and Deputy Freddy Padilla ("Padilla" or "defendant"), #2465, individually and as a peace officer. Plaintiff proceeds to trial under 42 U.S.C. § 1983 against Padilla on his claims for: (1) violation of his First Amendment rights; (2) excessive force; (3) unlawful seizure; and (4) malicious prosecution. (See Proposed Pretrial Conference Order, filed September 20, 2013, at 1 & 3-4). The parties have filed their pretrial documents, including five motions in limine filed by defendant. Having reviewed and considered all the briefing filed with respect to the motions in limine, the court concludes that oral argument is not necessary to resolve the motions. See Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

## FACTUAL BACKGROUND

Shortly after midnight on October 4, 2009, plaintiff, a student at the University of California, Santa Barbara, left his apartment in Isla Vista, California, and began walking down a public sidewalk with his friends. (See Complaint at ¶ 6). Plaintiff and one of his friends had water balloons in their hands. (See id.). Padilla left a group of deputies standing on the opposite side of the street, approached plaintiff's group, and ordered plaintiff to "drop the balloon." (See id.). Rather than dropping the balloons, plaintiff asked Padilla, "why can't we have water balloons?" (See id.).

According to plaintiff, Padilla did not answer, and instead "instantly became angry and rushed Plaintiff, grabbing him and thr[owing him] face first to the ground, causing facial injuries." (Plaintiff's Memorandum of Contentions of Facts and Law ("Plaintiff's Memo.") at 2; see Complaint at ¶ 6). In contrast, Padilla contends that plaintiff refused three times to drop his water balloons, tried to walk away from Padilla, pulled his arm out of Padilla's grasp, and stood up after being forced to sit on the curb. (Memorandum of Contentions of Fact and Law of Defendant Deputy Freddy Padilla Pursuant to Local Rule 16-4 at 11). Another deputy and two college campus officers approached and "compressed Plaintiff to the ground with their feet, knees and hands while Plaintiff was in complete physical control of defendants." (Plaintiff's Memo. at 2-3; see Complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

at ¶ 6). "Plaintiff was handcuffed and quickly hustled away from witnesses who repeatedly challenged the deputies['] actions." (Complaint at ¶ 6).

Upon plaintiff's release from jail the morning after his arrest, he went to the emergency room to have his physical injuries treated. (See Plaintiff's Memo. at 4). While his abrasions and contusions eventually healed, plaintiff's mental condition deteriorated. (See id.). Plaintiff withdrew from his social contacts, and "threw himself into his studies believing he would get over it in time." (Id.). His post traumatic stress disorder ("PTSD") and depression went undiagnosed until he attempted to take his own life on two separate occasions, resulting in his psychological diagnosis and treatment which has continued to the present. (See id.). Plaintiff states that each of his mental health care practitioners concur that his depression and PTSD are linked to the incident with defendant and plaintiff's subsequent prosecution. (See id.).

Plaintiff states that "Padilla recognized he had violated the law as well as Plaintiff's rights, and attempted to cover up his willful misconduct by fabricating probable cause for plaintiff's seizure and prosecution," and that he "fabricated that he had been conducting an investigation into a report by four unidentified persons claiming to have been struck by water balloons." (Complaint at ¶ 6). Plaintiff also alleges that Padilla "wrote and submitted to the Santa Barbara District Attorney a knowingly false crime and arrest report." (Id.). This report resulted in the filing of a one-count misdemeanor complaint against plaintiff in the Santa Barbara County Superior Court, to which plaintiff pleaded not guilty and demanded a trial. (See id.). On March 16, 2010, the case against plaintiff was unconditionally dismissed by the prosecution. (See id.).

## LEGAL STANDARD

Motions in limine are procedural devices to obtain an early and preliminary ruling on the admissibility of evidence. Although the Federal Rules of Evidence do not explicitly authorize motions in limine, the Supreme Court has noted that trial judges have developed the practice pursuant to their authority to manage trials. See Luce v. United States, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4 (1984). Trial courts have broad discretion when ruling on motions in limine. See Jenkins v. Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002). However, a "motion in limine should not be used to resolve factual disputes or weigh evidence." C & E Servs., Inc. v. Ashland Inc., 539 F.Supp.2d 316, 323 (D.D.C. 2008).

To exclude evidence on a motion in limine, the evidence must be "clearly inadmissible on all potential grounds." Ind. Ins. Co. v. Gen. Elec. Co., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." Hawthorne Partners v. AT & T Tech., Inc., 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F.Supp.2d 1216, 1218 (D. Kan. 2007).

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 2 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

Rulings on motions in limine "are not binding on the trial judge [who] may always change his mind during the course of a trial." Ohler v. United States, 529 U.S. 753, 758 n. 3, 120 S.Ct. 1851, 1854 n. 3 (2000). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." Ind. Ins. Co., 326 F.Supp.2d at 846.

With these standards in mind, the court now turns to the arguments raised by the parties in their motions.

## DISCUSSION

### I. DEFENDANT'S MOTION IN LIMINE NO. 1 TO EXCLUDE TESTIMONY OF PLAINTIFF'S DISCLOSED NON-RETAINED EXPERT WITNESSES ("MIL 1").

Defendant argues that plaintiff's non-retained expert witnesses should be precluded from offering testimony at trial as expert witnesses because plaintiff failed to properly disclose these witnesses under Federal Rule of Civil Procedure 26(a)(2)(C).[1] (See MIL 1 at ii). Rule 26 requires parties to "disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Civ. P. 26(a)(2)(A). If a witness is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony," then the disclosure under Rule 26(a)(2)(A) must be accompanied by a written expert report. See Fed. R. Civ. P. 26(a)(2)(B). If a party will be presenting the testimony of a non-retained expert witness, no expert report is required, but the party must disclose (1) "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705;" and (2) "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(I)-(ii). "Frequent examples" of non-retained expert witnesses to which Rule 26(a)(2)(C) applies "include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony." 2010 Adv. Comm. Note to Fed. R. Civ. P. 26(a)(2)(C).

Plaintiff has designated 12 medical providers who treated him after the subject incident to testify as fact witnesses and treating physicians. (See MIL 1 at 10). Plaintiff served his initial expert disclosures on October 16, 2012, prior to the November 2, 2012, deadline set forth in the Court's Order of April 16, 2012. (See Declaration of Mary Pat Barry in Support of MIL 1 ("Barry Decl. re: MIL 1"), at Exhibit ("Exh.") 1). However, these disclosures included only the names and addresses of the non-retained experts and did not provide the subject matter of their testimony or a summary of the facts and opinions as to which they were expected to testify. (See, generally, id.). Therefore, defendant objected that the disclosures did not comport with Rule 26(a)(2)(C).

---

[1] Unless otherwise noted, all "Rule" references are either to the Federal Rules of Civil Procedure or the Federal Rules of Evidence.

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 3 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

(See id., Exh. 2 at 2).[2]

Plaintiff served supplemental disclosures with summaries for each witness on November 27, 2012, (see Barry Decl. re: MIL 1, Exh. 3 at 5-8), and offered to stipulate to additional time for defendant to designate a rebuttal expert. (See id., Exh. 4 at 3). Defendant contends that these supplemental disclosures remain insufficient under Rule 26(a)(2)(C) and that plaintiff's experts should be excluded from trial. (See MIL 1 at 2 & 7).

The following are examples of plaintiff's supplemental expert disclosures:

> W. Nicol Guddal, Jackson Medical Group, 517 West Junipero Street, Santa Barbara, California 93105
> Dr. Guddal is the doctor Plaintiff saw the day after the incident. He examined Jay's face, hands, and back for signs of any trauma from the incident. He also recommended that Jay have his back X-rayed. Jay saw him one time. The defense has Jay's complete chart from this provider-witness.

(Barry Decl. re: MIL 1, Exh. 3 at 5).

> David Cain, PhD, 2945 Harding Street, Suite 103, Carlsbad, California 92008; (760) 533-9066
> Dr. Cain is the second psychologist Jay saw for several months. Jay began seeing him when his first psychologist, Susan Bell, had to leave the country for several weeks. Dr. Cain is Jay's primary mental health evaluator and treatment provider and as such will be testifying as to his opinions and diagnosis relating to how the Padilla assault and arrest incident impacted Jay's life in the years following it. Dr. Cain will describe how, in working with Jay he taught Jay to overcome the event and showed mental improvement. Dr. Cain will explain how he believes the incident altered Jay's life. The defense has Jay's complete chart from this provider-witness.

(Id. at 5-6).

> Barbara Czescik, PhD, 4180 La Jolla Village Drive, Suite 250, La Jolla, California 92037; (858) 452-3588
> Jay began seeing Dr. Czescik in May of 2012 after Dr. Sino's recommendation for group therapy. Jay met with her and a group of college students for a couple months after which time the group disbanded because people had to leave the area for school. When Jay began law school in August, 2012 Jay began seeing her individually because of a schedule

[2] Exhibit page numbers refer to the page number of the ECF header.

CV-90 (10/08) **CIVIL MINUTES - GENERAL** Page 4 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

> conflict with Dr. Cain. Dr. Czescik has an extensive knowledge of the incident, how it impacted Jay's life, and the long course of his recovery. She will provide her opinions, as reflected in her chart, as to the proximate connection to Jay's depression and suicide attempts to Padilla's conduct and how that incident caused Jay to suffer as a result of the injustice of the incident. She will opine that Padilla's conduct, rather than any other cause, was cause in fact for the crippling effects on Jay's psyche. The defense has Jay's complete chart from this provider-witness.

(Id. at 8).

Under the circumstances, the court is persuaded that the summaries provided by plaintiff in his supplemental disclosures are sufficient to comply with Rule 26(a)(2)(C). The Advisory Committee Notes caution that disclosures under Rule 26(a)(2)(C) are "considerably less extensive than the report required by Rule 26(a)(2)(B)." 2010 Adv. Comm. Note to Fed. R. Civ. P. 26(a)(2)(C). Moreover, "[c]ourts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." Id.

Similar summaries have been found to pass muster under Rule 26(a)(2)(C). For example, in Kristensen ex rel. Kristensen v. Spotnitz, 2011 WL 5320686 (W.D. Va. 2011), the court approved a disclosure stating that the expert treated plaintiffs "for significant psychiatric problems, which . . . stemmed from the family problems in dealing with the mold exposures," and that he would testify to one plaintiff's "adverse emotional and psychological impacts as a result of mold problems" and to "the temporal relationship between the Mother and child's problems and the problems in the home." Id. at *3 (internal quotation marks omitted). The court in Kristensen recognized that "the detail provided in [the] disclosures [was] not great," but found that they would "allow the Defendants an adequate opportunity to prepare their defense[,]" "[e]specially when read in light of the medical records disclosed" by plaintiff. Id. In this case, plaintiff has also provided defendant with his medical records. (See MIL 1 at 10).

The summaries at issue here are at least as detailed as the disclosures approved in Kristensen and other cases. See, e.g., Gilster v. Primebank, 884 F.Supp.2d 811, 844 (N.D. Iowa 2012), rev'd on other grounds, 747 F.3d 1007 (8th Cir. 2014) (summary was sufficient under Rule 26(a)(2)(C) where it stated that "Elizabeth Pratt treated Plaintiff throughout her anxiety and depression. . . . Plaintiff visited Ms. Pratt approximately 10 times from January 2010 to January 2011. Ms. Pratt's testimony will likely relate to Plaintiff's medical records, her treatment of her, and the effects of Defendants' actions on Plaintiff."); Nagle v. Mink, 2011 WL 3861435, *2 & *6 (D. Colo. 2011) (plaintiff met the requirements of Rule 26(a)(2)(C) where his disclosure stated that the expert "'treat[ed] Plaintiff regarding his diabetes diagnosis' and has developed a psychological opinion on his diabetes and its effects," that she would "opine on how diabetes affects a person's major life activity, specifically one's ability to work . . . [and] on how diabetes has affected the Plaintiff," and that she would "testify how Plaintiff was effected [sic], emotionally, from being

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 5 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

terminated . . . .") (alterations in original); Chesney v. Tennessee Valley Auth., 2011 WL 2550721, *3 n. 3 (E.D. Tenn. 2011) (disclosure providing that witness "may be called to testify about water flows and elevations in the Emore, Clinch, and Tennessee River portions of the Watts Bar Reservoir at various locations and times" was a sufficient summary under Rule 26(a)(2)(C)).

The court agrees with Valentine v. CSX Transportation, Inc., 2011 WL 7784120 (S.D. Ind. 2011), which noted that "the Court would generally prefer to see more detailed descriptions of the witnesses' potential opinion testimony than were provided . . . in this case and, had Defendant timely requested supplementation of the disclosures provided, the Court might well have ordered such supplementation. However, in the present circumstance, the disclosures provided were not so wholly deficient to justify the drastic step of exclusion of the testimony of the witnesses identified, particularly when Defendant made no effort to obtain such information prior to seeking to exclude the witness." Id. at *5 n. 1.

Here, plaintiff offered to stipulate to additional time for defendant to designate a rebuttal expert, but rather than agree to a stipulation, defendant simply informed plaintiff that he would object to any efforts to elicit testimony from plaintiff's disclosed experts. (See Barry Decl. re: MIL 1, Exh. 4 at 2-3). Finally, even if the court deemed plaintiff's summaries insufficient under Rule 26(a)(2)(C), exclusion of plaintiff's experts would not be an appropriate remedy under the circumstances of this case. See Lopez v. Keeshan, 2012 WL 2343415, *4 (D. Neb. 2012) ("It is true Plaintiff's disclosure of her alleged treating physicians is not a particularly well-crafted or in technical compliance with the requirements of Fed.R.Civ.P. 26(a)(2)(C). She provided names and the connection each expert has to Plaintiff's treatment and little else. . . . Although the previous disclosure of the medical records does not, in and of itself, excuse the faulty expert disclosures, the risk of any harm is substantially limited by the fact that the expert opinions Plaintiff may garner from treating physicians are those revealed within their medical treatment records, all of which the defendant has received."); Flonnes v. Prop. & Cas. Ins. Co. of Hartford, 2013 WL 2285224, *7 (D. Nev. 2013) ("Although not substantially justified, the Court finds that, under the specific circumstances of this case, Plaintiff's failure to properly disclose under Rule 26(a)(2)(C) is harmless. The five physicians were listed in Plaintiff's initial disclosure. Defendant does not contend that the disclosed treatment records were unreasonably voluminous."); Stamas v. Cnty. of Madera, 2011 WL 826330, *4-5 (E.D. Cal. 2011) (refusing to preclude expert's testimony at trial where plaintiffs served their expert disclosure one day after the deadline and the disclosure did not comply with Rule 26(a)(2)(C) because defendants already had possession of the expert's survey and the delay was harmless).

## II. DEFENDANT'S MOTION IN LIMINE NO. 2 TO EXCLUDE EVIDENCE THAT PLAINTIFF SEEKS TO INTRODUCE UNDER FEDERAL RULES OF EVIDENCE 404, 405 AND 608 ("MIL 2").

### A. "Other Acts" Evidence.

Defendant seeks to exclude "other acts" evidence relating to the arrests of Jamie Enyart

CV-90 (10/08) **CIVIL MINUTES - GENERAL** Page 6 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

("Enyart") and Fritz Krainer ("Krainer") on October 31, 2009, and the April 5, 2008 arrest of Kevin Plapp ("Plapp") and his subsequent trial in March 2009, as well as reputation and opinion evidence from Enyart, Krainer, Plapp, and William Makler, Esq. ("Makler"). (See MIL 2 at 1).

Enyart was arrested on Halloween night, 2009, for battery on a peace officer. (See MIL 2 at 2). He was charged in a criminal complaint and pleaded nolo contendre to disturbing the peace (maliciously and willfully disturbing another person by loud and unreasonable noise). (See id.). Enyart filed a citizen's complaint against Padilla and another deputy in March 2010, which included allegations of unlawful arrest, excessive force, and the filing of a false arrest report. (See id.). The allegations were investigated and determined to be "not sustained." (See id.).

Krainer is Enyart's friend, and he was arrested by another deputy on Halloween night, 2009, after he allegedly followed Padilla and Enyart into the booking area and refused to leave. (See MIL 2 at 2). Krainer was arrested for obstructing, resisting or delaying an officer, but no criminal complaint was filed against him. (See id.). Krainer submitted a citizen's complaint against Padilla and the arresting deputy, which included allegations of the unlawful arrest of both himself and Enyart and the preparation of false arrest reports. (See id.). The allegations were investigated and determined to be "not sustained." (See id.).

Plapp was arrested on April 5, 2008, by another deputy for battery on a peace officer and for obstructing, resisting or delaying a peace officer. (See MIL 2 at 2). Padilla was present during Plapp's arrest, and the next day, he conducted and recorded an interview of witness Kiel McElroy ("McElroy") and booked a CD of the audio recording into evidence. (See id. at 3). Padilla prepared a follow-up report in which he summarized his own actions and McElroy's description of Plapp's arrest. (See id. at 3). Plapp's case was tried before a jury in March 2009. (See id.). It appears that plaintiff contends that Padilla either testified that he falsified McElroy's statement in his police report, or that Padilla committed perjury in his testimony during Plapp's trial. (See id.). Plapp was convicted of battery on a peace officer and acquitted of obstructing, resisting or delaying a peace officer. (See id.).

Makler, a criminal defense attorney in Santa Barbara, California, represented Plapp in his criminal matter. (See MIL 2 at 3). Makler also represented plaintiff on the criminal charge against him arising out of the events underlying this case. (See id.).

Defendant argues that under the Federal Rules of Evidence, this "other acts" evidence is irrelevant, prejudicial, misleading, improper character evidence, and inadmissible for impeachment purposes. (See MIL 2 at ii). Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). "In making admissibility decisions, the [district] court will admit Rule 404(b) evidence if (1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 7 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." United States v. Vo, 413 F.3d 1010, 1018 (9th Cir.), cert. denied, 546 U.S. 1053 (2005) (internal quotation marks omitted) (alterations in the original).

This case involves claims for both malicious prosecution and punitive damages, so Padilla's intent is relevant. See Awabdy v. City of Adelanto, 368 F.3d 1062, 1066 (9th Cir. 2004) ("In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff 'must show that the defendants prosecuted [him] with malice and without probable cause, and that they did so for the purpose of denying [him] equal protection or another specific constitutional right.'") (quoting Freeman v. City of Santa Ana, 68 F.3d 1180, 1189 (9th Cir. 1995)) (alterations in the original); Dubner v. City and Cnty. of S.F., 266 F.3d 959, 969 (9th Cir. 2001) ("Punitive damages are available against individual police officers in a § 1983 claim only where the officers' 'conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'") (quoting Smith v. Wade, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640 (1983)).

Plaintiff asserts that "Padilla rushed and violently attacked Plaintiff, knocking him to the pavement because he perceived Plaintiff's legitimate inquiry as 'contemptuous' or disrespectful," (MIL 2 at 14), and that Padilla "falsely accuse[d] the plaintiff of crimes against himself when he unreasonably instigated the violence himself." (Id. at 15). According to plaintiff, testimony regarding the disputed "other acts" evidence should show that in "nearly identical incidents, Padilla resorted to his habit of 'turning tables' to make it appear as though Padilla's uses of force were proper, covered up with false accusations of crimes of 'resisting' and battery upon himself." (Id.). This type of evidence would support plaintiff's theory that Padilla acted with "malice" and an "evil motive or intent" for purposes of his malicious prosecution and punitive damages claims, and therefore "tends to prove a material point." See Vo, 413 F.3d at 1018.

Because the "other acts" evidence is admissible for another purpose aside from propensity, it is not barred by Rule 404(b). See Henderson v. City & Cnty. of S.F., 2007 WL 2938164, *4 (N.D. Cal. 2007) ("The other acts evidence may also be relevant to a rational jury's conclusion that [the officer] had a 'plan' to deny allegations of excessive force by claiming that inmates had posed a physical threat, and therefore force was justified."); Ismail v. Cohen, 899 F.2d 183, 188-89 (2d Cir. 1990) (finding that district court did not abuse its discretion in admitting evidence of citizen's complaint that defendant punched citizen without provocation and later falsely claimed that he was responding to an attack on his partner because the evidence could support pattern, intent, and absence of mistake); Carson v. Polley, 689 F.2d 562, 571-74 (5th Cir. 1982) (holding that district court abused its discretion in excluding under Rule 404(b) a performance evaluation stating that defendant officer tended to get into arguments with inmates and let his temper flare up too quickly because "[l]oss of temper and consequent intentional hostility towards other detainees on earlier occasions made it more likely that a similar intent was present in [defendant's] conduct towards [plaintiff]"); Darraj v. Cnty. of San Diego, 2012 WL 5966854, *3 (S.D. Cal. 2012) (discovery request seeking complaints alleging excessive force, false arrest, unlawful detention, unlawful search or

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 8 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

seizure, false reports, or false statements could lead to the discovery of admissible evidence, "as information contained therein could arguably be used pursuant to Fed.R.Evid. 404(b) or 608(b) and may be relevant on the issue of punitive damages"); see also Bender v. Cnty. of Los Angeles, 217 Cal.App.4th 968, 983 (2013) (evidence of other excessive force incidents was admissible under California's analogue to Rule 404(b) to impeach defendant's claims that "he used force because of plaintiff's provocation and used measured responses to gain control of him" and that "force was necessary because plaintiff was resisting being detained").

The prior acts are also "not too remote in time." Vo, 413 F.3d at 1018. Padilla arrested Enyart and Krainer on October 31, 2009, (see MIL 2 at 2), and arrested plaintiff on October 4, 2009, the very same month. (See Complaint at ¶ 6). He took McElroy's statement in April 2008 and testified at Plapp's trial in March 2009. Additionally, because plaintiff plans to present testimony from the individuals directly involved in these incidents,"the evidence is sufficient to support a finding that [Padilla] committed the other act[s]." Vo, 413 F.3d at 1018 (internal quotation marks omitted).

Finally, "the act[s are] similar to the offense charged." Vo, 413 F.3d at 1018 (internal quotation marks omitted). Regarding the arrests of Enyart and Krainer, plaintiff alleges that just as here, Padilla attempted to cover up an improper use of force with false accusations of resisting arrest and battery. (See MIL 2 at 15); see Henderson, 2007 WL 2938164, at *6 ("Deputy Prado's asserted justifications for use of force are also substantially similar. For every incident, he testified that the inmate both refused to obey an order, and either initiated some physical force against a deputy or posed a substantial risk of attacking at the time of the incident."). While the Plapp incident has a slightly different fact pattern given that Padilla was not the arresting officer, it includes allegations that Padilla falsified a report of his interview with McElroy regarding McElroy's description of Plapp's arrest. (See MIL 2 at 3). These allegations are similar to plaintiff's allegations that Padilla falsified plaintiff's arrest report in a way that altered the true facts concerning plaintiff's arrest. (See Complaint at ¶ 6).

B. Exclusion Under Rule 403.

Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Defendant argues that even if the "other acts" evidence was proper under rule 404(b), it should be excluded under Rule 403. (See MIL 2 at 6). Defendant cites Duran v. City of Maywood, 221 F.3d 1127 (9th Cir. 2000), a § 1983 case in which the Ninth Circuit held that the district court did not abuse its discretion under Rule 403 in excluding evidence of a similar shooting by the defendant officer. See id. at 1133. The district court had determined that "the marginally probative value of this evidence is substantially outweighed by the danger of unfair prejudice," and that "the court would have to have a full-blown trial within this trial." Id. (internal quotation marks omitted).

CV-90 (10/08) **CIVIL MINUTES - GENERAL** Page 9 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

Defendant's reliance on Duran is unpersuasive. Unlike Duran, the "other acts" evidence here is highly probative as to Padilla's intent for purposes of the malicious prosecution and punitive damages claims. Indeed, "[t]he other acts evidence may be particularly relevant where the jury may not have much direct evidence of [defendant's] intent in the incident in question." Henderson, 2007 WL 2938164, at *3; see Carson, 689 F.2d at 573 (performance evaluation report stating that officer tended to get into arguments with inmates and let his temper flare up too quickly was admissible under Rule 403). In Duran, an inquiry into the shooting incident would have required "the testimony of eighteen to twenty-three witnesses, as well as no less than four experts." Duran, 221 F.3d at 1133 (internal quotation marks omitted). While the "other acts" evidence at issue here may consume some time at trial, there is no indication that it will require the number of witnesses that were necessary in Duran. See Andrews v. City and Cnty. of S.F., 205 Cal.App.3d 938, 947 (1988) ("In every case where prior similar misconduct is admitted, the defendant may be expected to bring forth a contrary version of the events. However, the fact that the jury must resolve conflicting versions cannot justify the exclusion of all such evidence on this ground alone. There were other less drastic means of controlling time consumption, such as limiting the number of witnesses who could be called.").

Given that "Rule 403 . . . is an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence," United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995) (internal quotation marks and citation omitted), the court declines to exclude the "other acts" evidence on this basis. See United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant evidence under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing.") (internal quotation marks omitted).

C. Character for Truthfulness.

Defendant also seeks to exclude reputation and opinion testimony regarding Padilla's credibility from Enyart, Krainer, Plapp, and Makler. Under Rule 608, "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Fed. R. Evid. 608(a).[3] For reputation evidence to be admissible, the witness must show an "acquaintance with the defendant, the community in which he has lived and the circles in which

[3] Additionally, while "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness . . . the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness; or . . . another witness whose character the witness being cross-examined has testified about." Fed. R. Evid. 608(b). Plaintiff is free to attempt to elicit testimony from Padilla in accordance with this rule.

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 10 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

he has moved, as to speak with authority of the terms in which generally he is regarded." Michelson v. United States, 335 U.S. 469, 479, 69 S.Ct. 213, 219 (1948), superseded by statute on other grounds as recognized by United States v. Scholl, 166 F.3d 964, 974 (9th Cir. 1999); see United States v. Watson, 669 F.2d 1374, 1382 (11th Cir. 1982) ("The reputation witness must have sufficient acquaintance with the principal witness and his community in order to ensure that the testimony adequately reflects the community's assessment."). "In contrast, opinion testimony is a personal assessment of character. . . . Hence, a foundation of long acquaintance is not required for opinion testimony. Of course, the opinion witness must testify from personal knowledge. But once that basis is established the witness should be allowed to state his opinion, cross-examination can be expected to expose defects." Watson, 669 F.2d at 1382 (internal quotation marks and citations omitted).

Defendant argues that "any opinion that Enyart or Krainer might have that Deputy Padilla lacked probable cause to arrest Enyart, i.e., made a false report, is belied by Enyart's own admission of culpability for a crime." (MIL 2 at 9). Defendant also contends that any "opinion that Deputy Padilla's follow-up report intended to misrepresent Mr. McElroy's description of Plapp's arrest is contradicted by the fact of the CD evidence itself" because "Padilla lodged into evidence the entirety of his audio-recording of his interview with Kiel McElroy." (Id.). While defendant may certainly raise these issues during cross-examination, these are not grounds to exclude Enyart, Krainer, or Plapp's opinions entirely, especially where, as here, Padilla's character for truthfulness is highly relevant; the central issue in this case is whether plaintiff or Padilla is telling the truth about the circumstances of plaintiff's arrest. With respect to reputation evidence offered by Enyart, Krainer, and Plapp, plaintiff must lay the appropriate foundation, in compliance with the requirements set forth in Michelson, before any reputation evidence will be admitted. If the only knowledge these individuals have about Padilla is the circumstances of their own arrests, plaintiff will not have laid an adequate foundation for reputation evidence because they will not have shown familiarity with the community in which Padilla lives and the circles in which he moves.

Makler, however, will not be permitted to offer reputation or opinion evidence. In United States v. Whitmore, 359 F.3d 609 (D.C. Cir. 2004), the defendant offered the testimony of a local criminal defense attorney who would testify regarding the arresting officer's reputation for untruthfulness within the "court community" and his own opinion that the officer was untruthful. See id. at 617. The D.C. Circuit Court of Appeals affirmed the district court's decision to exclude both the attorney's proposed reputation testimony and proposed opinion testimony. See id. at 617-18. The court first noted that the issue of whether the "court community" represents a cognizable community for the purpose of a law enforcement officer's reputation is "troublesome." Id. at 617. Even leaving this issue aside, the foundation for the attorney's testimony was weak because "it relied on [his] conversations with only a few other criminal defense counsel, a subset of the proposed 'community.'" Id. Here, plaintiff states only that Makler "is familiar with Deputy Padilla's poor reputation for truthfulness in the Santa Barbara courts," (MIL 2 at 19), and has not attempted to provide any further foundation for his testimony.

Similar issues arise with respect to Makler's proposed opinion testimony. In Whitmore, the

CV-90 (10/08) **CIVIL MINUTES - GENERAL** Page 11 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

D.C. Circuit approved the district court's decision to exclude the attorney's opinion testimony because "[t]he foundation for [the attorney's] opinion that [the officer] was untruthful was limited to his observation that [the officer] had testified falsely against his clients." In this case, defendant argues that the foundation for Makler's opinion that Padilla is untruthful is presumably "limited to his observations of Deputy Padilla's involvement in his client Plapp's arrest and conviction and his arrest of Shafer[.]" (MIL 2 at 8). Under the circumstances, Makler's reputation and opinion testimony would lack foundation and therefore have very little probative value. Even if his testimony would arguably be proper, the court would exclude it under Rule 403 as cumulative of Plapp's and plaintiff's testimony.

III. DEFENDANT'S MOTION IN LIMINE NO. 3 TO EXCLUDE ANTI-LAW ENFORCEMENT SLURS ("MIL 3").

Defendant seeks an order excluding testimony, evidence, reference, discussion or argument regarding "anti-law enforcement slurs," such as "contempt of cop," "cops lying for cops," and "code of silence." (MIL 3 at ii). Defendant argues that such evidence is irrelevant under Federal Rules of Evidence 401 and 402, should be excluded under Rule 403 because its probative value is substantially outweighed by a danger of undue prejudice, confusing the issues, and misleading the jury, and there is no foundation for admission as routine practice or habit under Rule 406. (See id.).

The "code of silence" is an "informal rule according to which one police officer does not report on or testify against another police officer, regardless of the nature of the accused officer's conduct." Kinney v. Weaver, 367 F.3d 337, 366 n. 32 (5th Cir.), cert. denied, 543 U.S. 872 (2004). "Contempt of cop" is a phenomenon "wherein officers bring questionable charges of resisting arrest or assault upon an officer to cover up their own inappropriate conduct." Hutchison v. Cutliffe, 2004 WL 5524566, *3 (D. Me. 2004).

Under the circumstances here, the court is persuaded that these concepts are relevant to the instant case. The "code of silence" essentially describes a bias that one officer may have in favor of another officer. Bias "describe[s] the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party." United States v. Abel, 469 U.S. 45, 52, 105 S.Ct. 465, 469 (1984). "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." Id.

Here, defendant may call several other officers to testify as witnesses to the incident. Given that plaintiff's and defendant's descriptions of the incident are diametrically opposed, the case will turn on whose version of the incident the jury believes. As such, the officers' credibility is particularly important. Testimony regarding the concept that police officers have an informal rule that they will not testify against each other's interests goes directly to their potential motive to lie.

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 12 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

Nevertheless, the court will, under the circumstances here, grant MIL3 without prejudice as to "code of silence" and "contempt of cop." See Engman v. City of Ontario, 2011 WL 2463178, *4 (C.D. Cal. 2011) (excluding use of the term "code of silence" as "pejorative terminology," but allowing plaintiffs to argue that defendants "engaged in a cover up in relation to their false police reports claim" and that "defendants' version of the facts [was] not credible"); Townsend v. Benya, 287 F.Supp.2d 868, 876 (N.D. Ill. 2003) ("The motion is granted in that the phrase 'code of silence' is unduly prejudicial and may not be used at trial. However, bias is nearly always relevant. . . . Accordingly, Defendants' motion is denied with respect to Plaintiffs' ability to argue bias and prejudice of one police officer on behalf of a colleague in the same way any party may argue the bias of any witness in relationship to a plaintiff or defendant."); Baltimore v. Haggins, 2013 WL 4676455, *7 (E.D. Cal. 2013) ("Plaintiff may argue that correctional officers who testify and support Defendant's version are biased or are not truthful because of their work relationship or their friendship."). If plaintiff can establish, during cross-examination of the officers, that there are significant and material differences in the officers' accounts of the incident, the court may allow plaintiff's counsel to inquire as to the "code of silence" and "contempt of cop." "Cops lying for cops," however, is a description of the concept behind the "code of silence" rather than a pejorative phrase. Therefore, MIL3 is denied as to that phrase.

Finally, the court notes that plaintiff will be able to argue that defendant and the other officers engaged in a cover up in relation to plaintiff's false police reports claim and that defendant and the other officers' version of the facts was not credible. See Engman, 2011 WL 2463178, at *4. Similarly, plaintiff may argue bias and prejudice of one police officer on behalf of a colleague in the same way any party may argue the bias of any witness in relationship to a plaintiff or defendant. See Townsend, 287 F.Supp.2d at 876.

IV. DEFENDANT'S MOTION IN LIMINE NO. 4 TO EXCLUDE EVIDENCE OF SANTA BARBARA SHERIFF'S OFFICE USE OF FORCE POLICY AND FORM ("MIL 4").

Plaintiff intends to elicit testimony at trial concerning §§ 300.4 and 300.4.1 of the Santa Barbara County Sheriff's Office Use of Force policy. (See Declaration of Mary Pat Barry Re: Meet and Confer Process, ("Barry Decl. Re: M&C"), Exh. C at 20). Section 300.4, entitled "Reporting the Use of Force," states that "[a] reportable use of force is any on- or off-duty incident where deputies, pursuant to their official capacity, use a level of force to control a subject in which the subject of the force is injured, loses consciousness, or complains of pain resulting from the application of force on the subject. . . . Any use of physical force by a member of the Department shall be documented promptly, completely, and accurately in the reports relating to the incident, including the Use of Force Form." (Declaration of Mary Pat Barry Re: MIL 4 ("Barry Decl. Re: MIL 4"), Exh. 1 at 5). Section 300.4.1, entitled "Notification to Supervisors," provides that "supervisory notification shall be made as soon as practical following the application of force" if the use of force is reportable due to the circumstances described in § 300.4. (See id.). Plaintiff plans to "cross-examine Deputy Padilla regarding the fact that Deputy Padilla did not describe the scuff on Shafer's cheek in his arrest report, did not notify a supervisor of the use of force, and did not complete a use of force report form and thereby violated the [Santa Barbara Sheriff's Office] Policy

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 13 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

300 requirements for reporting the use of force." (MIL 4 at 3).

Defendant argues that the Use of Force policy is irrelevant because the "reasonableness inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." (MIL 4 at 4) (quoting Graham v. Connor, 490 U.S. 386, 397, 109 S.Ct. 1865, 1872 (1989), overruled on other grounds by Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001)). Defendant also cites a Tenth Circuit decision affirming the district court's exclusion of police department standard operating procedures ("SOPs") in a § 1983 case. (See MIL 4 at 5) (citing Tanberg v. Sholtis, 401 F.3d 1151 (10th Cir. 2005)). While the court agrees that intent is not ordinarily relevant in an excessive force case, it is relevant when a plaintiff brings malicious prosecution and punitive damages claims, as plaintiff has done here. See supra at § II.A. Further, Padilla's failure to report his use of force against plaintiff supports plaintiff's theory that Padilla knew his use of force was inappropriate and that he was attempting to cover up or downplay its consequences to avoid any potential discipline or inquiry.

Regarding Tanberg, the SOPs at issue there were qualitatively different from the Use of Force policy sections that plaintiff seeks to admit. The SOPs in Tanberg required "an assessment of an officer's choice between various techniques for de-escalation," which is "beyond the scope of inquiry mandated by state and federal law, which require that an officer use reasonable, not optimal, force." Tanberg, 401 F.3d at 1162. The district court concluded that evidence of this standard "could cause the jury to mistake violations of the SOPs for a constitutional violation." Id. at 1164. The other part of the SOPs "merely duplicate[d] the reasonableness standard that governs claims of excessive force," id. at 1163, so it had no probative value.

The sections of the Use of Force policy at issue here relate to requirements that the officer must follow after the use of force, so it is not likely that the jury will necessarily equate a violation of the Use of Force policy with constitutionally excessive force. Additionally, while the Tenth Circuit "has consistently held that the violation of police regulations is insufficient to ground a § 1983 action for excessive force," Tanberg, 401 F.3d at 1163, the Ninth Circuit has held that, "[a]lthough such training materials are not dispositive, we may certainly consider a police department's own guidelines when evaluating whether a particular use of force is constitutionally unreasonable." Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1059 (9th Cir. 2003), cert. denied, 542 U.S. 918 (2004); see also Ludwig v. Anderson, 54 F.3d 465, 472 (8th Cir. 1995) ("Although these police department guidelines do not create a constitutional right, they are relevant to the analysis of constitutionally excessive force.") (internal quotation marks and citations omitted); see Smith v. City of Hemet, 394 F.3d 689, 703 (9th Cir. 2005) (noting that rational jury could rely on expert testimony based on law enforcement standards and internal police policies).

The court also declines to exclude evidence of the Use of Force policy and form under Rule 403. "Rule 403 . . . is an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence," Mende, 43 F.3d at 1302 (internal quotation marks and citation omitted). The evidence at issue has probative value because it lends support to

CV-90 (10/08) CIVIL MINUTES - GENERAL Page 14 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

plaintiff's theory regarding Padilla's intent. Contrary to defendant's suggestion, this probative value is not substantially outweighed by the amount of time it will take to explain the policy and its implementation. (See MIL 4 at 6).

V. DEFENDANT'S MOTION IN LIMINE NO. 5 TO EXCLUDE HOLLY MAGANA FROM TESTIFYING AS A DAMAGES WITNESS AT TRIAL ("MIL 5").

Defendant requests that the court preclude plaintiff's maternal aunt, Holly Magana, Ph.D, ("Magana") from testifying as a damages witness at trial because her testimony would be cumulative, misleading and prejudicial to defendant. (See MIL 5 at ii & 2). Magana is a psychologist, but was not disclosed as an expert witness.

Defendant argues that Magana's testimony as a damages witness would be cumulative because plaintiff will presumably testify to his damages and will likely seek to present damages testimony from his mother, father, and sister. (See MIL 5 at 3). The court disagrees. Defendant is expected to argue that plaintiff's psychological issues were caused by his breakup with his long-time girlfriend rather than by the incident with defendant. (See id. at 6). Magana will testify that she observed plaintiff's deteriorating condition prior to the breakup, and advised plaintiff's parents that he should seek treatment. (See id. at 5-6). Magana's testimony will corroborate plaintiff's and his immediate family's testimony, (see id. at 5), but that does not render her testimony cumulative; the jury may be more inclined to credit an aunt's testimony than that of an immediate family member living in the same household as plaintiff.

Defendant also argues that Magana's testimony would be prejudicial because as a psychologist, her testimony "would carry a veil of authority," even though she has not been designated as an expert. (See MIL 5 at 2). However, plaintiff maintains that Magana "at no time diagnosed or attempted to render professional health care guidance" to plaintiff, and that she "will not be called upon to render any expert opinions relating to the plaintiff's damages." (Id. at 5). Given this representation, Magana may testify so long as she does not attempt to offer any diagnosis and limits her testimony to what she observed as a percipient witness.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion in Limine No. 1 to Exclude Testimony of Plaintiff's Disclosed Non-Retained Expert Witnesses **(Document No. 71)** is **denied**.

2. Defendant's Motion in Limine No. 2 to Exclude Evidence that Plaintiff Seeks to Introduce under Federal Rules of Evidence 404, 405 and 608 **(Document No. 72)** is **granted in part and**

CV-90 (10/08) **CIVIL MINUTES - GENERAL** Page 15 of 16

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | **CV 11-8110 FMO (FFMx)** | Date | **August 5, 2014** |
|---|---|---|---|
| Title | **Jay Russell Shafer v. County of Santa Barbara, et al.** | | |

**denied in part**.

3. Defendant's Motion in Limine No. 3 to Exclude Anti-law Enforcement Slurs **(Document No. 73)** is **granted in part and denied in part**.

4. Defendant's Motion in Limine No. 4 to Exclude Evidence of Santa Barbara Sheriff's Office Use of Force Policy and Form **(Document No. 75)** is **denied**.

5. Defendant's Motion in Limine No. 5 to Exclude Holly Magana from Testifying as a Damages Witness at Trial **(Document No. 74)** is **denied**.

vdr