Thomas E. Beck, Esq.   (State Bar No. 81557)
**THE BECK LAW FIRM**
10377 Los Alamitos Boulevard
Los Alamitos, California 90720
Telephone No. (562) 795-5835
Facsimile No.: (562) 795-5821
Email: becklaw@earthlink.net

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAY RUSSELL SHAFER,<br><br>             Plaintiff,<br><br>v.<br><br>COUNTY OF SANTA BARBARA, BILL BROWN, individually and as Sheriff of Santa Barbara County, SANTA BARBARA SHERIFF'S DEPARTMENT, DEPUTY FREDDY PADILLA, #2465 individually and as a peace officer, DOES 1-10, inclusive,<br><br>             Defendants. | Case No: 2:11-cv-08110-FMO-FFM<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES AND COSTS**<br><br>Hearing Date: 3/5/15<br>Hearing Time: 10:00AM<br><br>Judge: Hon. Fernando M. Olguin<br>Courtroom:  22 – 5th Floor Spring St. |

TO DEFENDANTS AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 5, 2015, at 10:00AM., in Courtroom 22 of the above entitled court, located at 312 N. Spring Street, Los Angeles, California, Plaintiff will move the court for an order awarding attorneys fees and costs.

Plaintiff has prevailed in establishing defendants liability and damages on his § 1983 claims by a jury verdict December 17, 2014. Judgment on the verdict

1.

was entered December 22, 2014 [Doc 183].  Plaintiff's costs and fees to date are therefore recoverable as a matter of law.

This motion will be based on this notice, on the attached memorandum of points and authorities, declarations and exhibits, and on such other evidence as may be received by the Court.

Dated: February 2, 2015                 **THE BECK LAW FIRM**


By: /s/Thomas E. Beck
          THOMAS E. BECK
          Attorneys for Plaintiff

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

# JOINT MEMORANDUM OF POINTS AND AUTHORITIES

## OVERVIEW AND RELIEF REQUESTED.

*Plaintiff's Position:*

Plaintiff brought this action under 42 U.S.C. § 1983 alleging his rights had been violated on October 4, 2009 by defendant Santa Barbara Senior Sheriffs Deputy Freddie Padilla. Mr. Shafer prevailed at jury trial on December 22, 2014 by being awarded $120,000 in general and special damages against Defendant Padilla. Mr. Shafer is therefor the prevailing party and hereby moves for an order awarding attorneys fees and costs pursuant to 42 U.S.C. § 1988.

Shafer's counsel's lodestar begins September 9, 2011 and continues through the present date is described in Exhibit C within the Appendix filed concurrently with this motion:

| Attorney | Hours Sought | Hourly Rate | Lodestar |
|----------|--------------|-------------|----------|
| Thomas E. Beck | 348.56 | $700 | $243,992 |
| Ellen Ellison | 8.2 | $600 | $4920 |
| Matthew Garcia | 12 | $350 | $4200 |

TOTAL COSTS AND EXPENSES SOUGHT:                    $266,569.42

The work performed by Plaintiff's counsel was necessary to the demands of the lawsuit and the time dedicated to the case is consistent with the duties of the litigation. Mr. Beck's $700 hourly rate requested is reasonable for counsel of his depth of professional experience in police misconduct litigation and prevailing market hourly rates for counsel similarly situated in the Los Angeles metropolitan legal community. See Appendix Carol Sobel, Esq. declaration ¶ 12; Dale Galipo, Esq. declaration ¶ 8, 10; John Burton, Esq. declaration ¶ 11,12. Plaintiff's counsel seeks a $266,569.42 ruling through February 2, 2015.

Similarly, the hourly rates being requested by attorneys Ellen Ellison and Matthew Garcia are well within the Los Angeles metropolitan market range for compensation by counsel of like standing and experience.

*Defendant's Position:*

Defendant Deputy Freddy Padilla ("Padilla") filed a Rule 50(b) motion for judgment as a matter of law, along with a Rule 59 motion for a new trial, on Plaintiff Jay Shafer's ("Shafer") excessive force claim. Those motions were filed on January 20, 2015 and are set for hearing on March 5, 2015. If Padilla is successful on those motions, this motion for attorney's fees and costs will be moot. Padilla's contentions are presented below to present a timely response to Shafer's motion for attorney's fees and costs and are not intended to suggest in any way that Padilla believes Shafer should be awarded any amount of attorney's fees or costs.

If the Court rules on this motion for attorney's fees and costs, Shafer's limited success in his lawsuit warrants a downward adjustment of his attorney's hourly rate or, in the alternative, a downward adjustment of the calculated lodestar. Shafer was successful on just one of the six constitutional violations he originally alleged in his complaint. Furthermore, the jury awarded Shafer slightly less than 11% of the amount his attorney asked for in non-economic damages during closing argument ($700,000 requested; $75,000 awarded). Shafer's success on his excessive force claim, under the circumstances of this case, did not impart any significant benefit to the public so that a 70 percent downward departure is warranted.

**FIRST ISSUE: <u>IS SHAFER THE PREVAILING PARTY UNDER 42 U.S.C. § 1988(b)?</u>**

*Joint statement:* The question of whether Shafer is "the prevailing party" under 42 U.S.C. § 1988, so that the court, in its discretion, may allow Shafer a reasonable attorney's fee as part of the costs of this litigation, is not in dispute.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

4.

The parties agree that the jury's verdict finding in favor of Shafer on his excessive force claim, and the jury's award of $45,000 in economic damages and $75,000 in non-economic damages, qualifies him as a prevailing party. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Farrar v. Hobby,* 506 U.S. 103, 111, 113 S.Ct. 566, 121 l.Ed.2d 494 (1992).

**SECOND ISSUE: IS PLAINTIFF'S COUNSEL'S REQUESTED HOURLY RATE REASONABLE?**

*Plaintiff's Position:*

"'Several important principles bear on the district court's determination of a reasonable fee amount. First, the court must compute the fee award using an hourly rate that is based on the "prevailing market rates in the relevant community.' *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005)" *Gonzales v. City of Maywood*, 2013 U.S. App. LEXIS 18703 * 3 (9th Cir. 2013). The lodestar calculation is based upon determination of an applicable hourly fee multiplied by number of hours expended. *Hensley v. Eckerhart, supra,* 461 U.S. at 433. The lodestar is "presumed to be the reasonable fee contemplated by Section 1988." *City of Riverside v. Rivera, supra,* 477 U.S. at 568. Consequently, "a court's discretion to deny fees under § 1988 is very narrow and · fee awards should be the rule rather than the exception." Id. (quoting Herrington v. Cnty. of Sonoma, 883 F.2d 739, 743 (9th Cir.1989)) (internal quotation marks omitted). *Barnard v. Theobald* 721 F. 3d 1069, 1077 (9th Cir. 2013)

Beck's contemporaneous billing records add up to 348.56 hours over a 5 year span. The defense identifies 4.3 hours from this total as challengeable. As the record bears out, the hours into the case are reasonable to the tasks and demands of the litigation over this time. Mr. Garcia and Ms. Ellison have one day apiece in 2014. The defense criticism of Garcia's and Ellison's winnows their compensable time only to time spent in the courtroom. No attorney bills

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

clients for trips to court only for the time the court is in session but that is what the defense argues against Mr. Garcia and Ms. Ellison. Garcia was required to stand in for Beck for the reading of instructions and jury notes that followed while Beck was engaged in another trial. Similarly, Ms. Ellison was required to be present for deliberations and the taking of the verdict. Asking to be paid round trip to and from the courthouse to attend to these necessary tasks is not uncommon. Travel time is properly compensable in a fee motion such as this. *Suzuki v. Yuen*, 678 F.2d 761, 764 (9th Cir. 1982).

Furthermore, Beck's request to apply $700 per hour for his legal services is not only reasonable, but actually below prevailing market rates for counsel of his depth of experience and expertise in this kind of litigation.  See Sobel declaration paragraph 12 ."It is my understanding from communicating with Mr. Beck that he is continuing to apply his 2014 rate to the fee application in this case.  Even with that caveat, in my opinion, this rate is at the very low end of rates in the Los Angeles legal market for lawyers of comparable skill, experience and reputation engaged in similarly complex federal litigation."

Ms. Sobel's evidence, together with Mr. Burton's, Mr. Galipo's and Ms. Ellison's meet plaintiff's burden to prove the market rates that should apply. The defense has offered nothing to refute these figures. The defense bears the burden of producing a sufficiently cogent explanation and specific reasons for reductions of the lodestar. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). Only exceptional circumstances will justify deviating from the lodestar calculation.  *Quesada v. Thomason,* 850 F.2d 537 (9th Cir. 1988). These same declarations and the exhibits appended to them demonstrate both what the market rate for plaintiff's counsel litigating section 1983 police abuse cases has been awarded and the relevant legal community. Hence, Shafer has established the applicable market and the appropriate hourly rates to use.

Shafer's presentation is buttressed by Beck's fee awards over time. Evidence that the rate has been awarded in the past is also competent proof. *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1214 (9th Cir. 1986).  As of the date of this submission, Judge Pregerson set Beck's compensation in *Cervantes v. County of Los Angeles,* cited by the defense, at $700. See Beck declaration paragraph 7.   An attorney declaration supporting the time incurred constitutes "[s]worn testimony that, in fact, it took the time claimed" and "is evidence of considerable weight on the issue of the time required in the case."  *Perkins v. Mobile Housing Board,* 847 F.2d 735, 738 (11th Cir. 1988).

The defense quotes from Judge Andrew Guilford's 1/31/14 fee award to Beck of $300 per hour in *Zerby v. City of Long Beach*. The defense concedes Judge Guilford's application of that rate to Beck is currently on appeal. The quotation lifted from that ruling set out below demonstrates plain error in that market rates had no bearing on the $300 hourly rate the court applied to Beck.

Mr. Burton's declaration and exhibits in support of this motion show Central District partner billing rates in non-1983 police misconduct litigation ranges from $785 on the high side to $340 on the low which sets the parameters for the broader legal community for the court to consider. At the same time the Burton, Sobel and Galipo evidence demonstrates hourly fee rates actually applied by Central District bench officers to police misconduct practitioners such as Beck, Ellison and Garcia rather than the broader legal community.

The hourly rates Shafer asks the Court to apply are reasonable.

*Defendant's Position:*

The hourly rate sought by Mr. Beck is unreasonable. The Supreme Court in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), stated that under 42 U.S.C. § 1988, "reasonable fees" are calculated according to the prevailing market rates in the relevant community. *Blum,* 465 U.S. at 895. In so stating, the Court noted its recognition of the inherent difficulty in determining

an appropriate "market rate" for a lawyer's services. *Blum,* 465 U.S. at 895 n.11. To inform and assist a district court in its exercise of discretion to determine a reasonable rate, the attorney applying for fees carries the burden to produce satisfactory evidence, in addition to his or her own affidavits, that the rates sought are in line with those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 895, n.11. A rate determined in reliance on such evidence is referred to as "the prevailing market rate" and is normally deemed to be reasonable. *Blum,* 465 U.S. at 895, n.11.

In determining a reasonable hourly rate, the district court may look to the hourly rates charged by comparable attorneys for similar work. *Moreno v. City of Sacramento,* 534 F.3d 1106, 1115 (9th Cir. 2008). The district court can also consider fees awarded by other judges in the same locality in similar cases. *Moreno,* 534 F.3d at 1115; *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1207 (9th Cir. 2013).

Factors relevant to the determination of the reasonable rate component of the lodestar calculation include (1) the novelty and difficulty of the questions involved, (2) the skill requisite to perform the legal service properly, (3) whether the fee is fixed or contingent, (4) the experience, reputation, and ability of the attorney, and (5) fee awards in similar cases. *Moreno v. City of Sacramento,* 534 F.3d 1106, 1114 (9th Cir. 2008); *Morales v. City of San Rafael,* 96 F.3d 359, 365 n.8 & n.9 (9th Cir. 1996).

To carry his burden under *Blum*, Mr. Beck provides his own declaration and declarations from attorneys John Burton, Carol Sobel, and Dale Galipo. In his own declaration, Mr. Beck presents a history of attorney's fees awards across 16 years, with the most recent from a 2008 state court at $600 an hour. In *R.S.[Zerby] v. City of Long Beach,* SACV 11-536 AG (RNBx) (C.D. Cal., January 31, 2014), referenced in Mr. Beck's declaration (Beck Decl. ¶ 2(d)), he

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

sought a $750 hourly rate and was awarded $300 an hour.[1]  In that case, Judge Guilford discussed the lodestar calculation and stated as follows:

> It seems that the incentive in these types of cases leads directly to windfalls. Attorneys represent to courts that their rate is high, get someone else (generally an attorney in their field who may also seek a similar rate in the future) to endorse that rate, and hope the court will grant something near it. Since they don't actually have to charge the rate to anyone, it doesn't matter if the rate is so high that no one would pay it. And then, once a court awards a high rate, the attorney (and the attorney in the field who endorsed the rate) can use that as justification for requesting an even higher rate in the next case. *See Kochenderfer v. Reliance Standard Life Ins. Co.,* 06-CV-620 JLS (NLS), 2010 WL 1912867 (S.D. Cal. Apr. 21, 2010) (describing declarations supporting the attorney fee motions as "self-serving and self-perpetuating.").

> Take attorney Beck, for example. Around September 2011, Beck told the Court that his hourly rate was $400. This Court found that Beck had not sufficiently justified the $400 rate, and found that a $275 hourly rate was appropriate. Now, barely more than 3 years later, and for some time that directly overlaps with the time involved in the September 2011 case, Beck's claimed hourly rate has nearly *doubled* to $750. What explains this rise? Beck is more experienced now, but not much more so, especially at the start of this case. And Beck was the second attorney in both

---

[1] All parties have appealed the attorney's fee award to the Ninth Circuit and briefing is due in February and March, 2015. Ninth Circuit Case No. 14-55338 and 14-55339.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

9.

cases, so that doesn't help. It shouldn't take $350 more dollars an hour, or $475 more than this Court previously found reasonable, to attract qualified counsel to this kind of case only three years later.

*R.S. v. City of Long Beach,* SACV 11-536 AG (RNBx) (Dkt. No. 221, pp. 5-6) (C.D. Cal. Jan. 31, 2014).

The declarations Mr. Beck presents to support his requested hourly rate do not provide sufficient support for that request. This type of support has been found conclusory by the Ninth Circuit. More importantly, and consistent with Judge Guilford's analysis quoted above, these declarations are executed by plaintiff-side civil rights attorneys "who are not unbiased observers in these matters." *Oviatt v. Pearce,* 954 F.2d 1470, 1482 n.12 (9th Cir. 1992).

**Burton Declaration.** Mr. Burton states that he manages his own firm focused on representing plaintiffs in police-misconduct actions and has done so since May 1984. Burton Decl. ¶ 5. He states that he considers his reputation, skill and experience to be equal to Mr. Beck's. Burton Decl. ¶ 16. Mr. Burton refers to "the average for Los Angles partner billing rates of $800 per hour" without providing any source for that number. Burton Decl. ¶ 16. Mr. Burton makes a conclusory statement that $700 per hour is an appropriate rate and necessary to attract attorneys of Mr. Beck's quality. Burton Decl. ¶ 17. To support his assertion that $700/hour is a reasonable hourly rate for Mr. Beck, Mr. Burton relies on a chart containing data compiled from publicly available documents regarding billing rates of lawyers at 550 U.S. law firms. Burton Decl. ¶ 24 and Ex. A. An average large law firm billing rate offers almost no value to the calculation required to be made here, where the Court is to determine an appropriate rate in the Central District for civil rights plaintiffs' attorneys doing work of similar complexity to that of this case.

Mr. Burton also relies on a billing survey. He presents examples of

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

partner billing rates at four of the 11 firms listed that are located in the Central District. Burton Decl. 24. Other Central District firms listed in the same survey show the following ranges of partner billing rates, from low to high:

Allen Matkins, et al, Los Angeles, $525 - $680 (average $614); Best Best & Krieger, Riverside, $340 - $655 (avg. $455); Buchalter Nemer, Los Angeles, $475 - $695 (avg. $605); Jackson Lewis, Los Angeles, $310 - $440 (avg. $380); Knobbe, Martens, et al., Irvine, $440 - $785 (avg. $555); O'Melveny & Myers, Los Angeles, $615 - $950 (avg. $715); and Rutan & Tucker, Costa Mesa, $345 - $675 (avg. $490). These figures provide no information regarding the type of work these partners are doing so, while generally of interest, they are not useful for the specific work of calculating a reasonable hourly rate here.

**Sobel Declaration.**

Ms. Sobel relies on six fee awards in the Central District. Sobel Decl. ¶¶ 15-20. Two of these are for Mr. Galipo, who provides a declaration in this case, which is discussed below. One of these (Sobel Decl. Ex. 3) does not provide the information Ms. Sobel states in her declaration, which is hearsay. Sobel Decl. ¶ 16. Rather, the ruling attached to her declaration as Exhibit 3 only states that two attorneys sought a high combined hourly rate of $1250 per hour. Sobel Decl. Ex. 3, ¶ 8. All other attorney's fees awards relied upon by Ms. Sobel, excluding Mr. Galipo (discussed below), awarded hourly rates below what Mr. Beck seeks here.

**Galipo Declaration.**

Mr. Galipo's $800/hour rate was deemed unreasonable in 2013. In *Contreras v. City of Los Angeles,* 2:11-cv-1480-SVW-SH, 2013 U.S. Dist. LEXIS 49412 (C.D. Cal., March 28, 2013), Mr. Galipo was lead counsel. After a jury trial on an excessive force claim with a verdict for plaintiff and an award of $4.5 million plus $1,225,000, Mr. Galipo sought attorney's fees at an hourly rate of $800. Similar to Mr. Beck here, Mr. Galipo relied on a John Burton

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

declaration and an article from the Los Angeles Daily Journal indicating average Los Angeles law firm partner rates of $797 an hour (apparently the same article presented as Exhibit A to John Burton's declaration here). *Id.* at *5-6. Judge Wilson rejected the rate, finding it lacked sufficient support, and, after analyzing certain factors, found $675 an hour a reasonable rate for Mr. Galipo. *Id. at *6-8.*[2]

Mr. Galipo's declaration states that he, himself, has won multiple six- and seven- figure civil rights verdicts. Galipo Decl. ¶ 3. In contrast, Mr. Beck's declaration states that he was a member of teams of lawyers in two cases resulting in one eight- and one seven-figure civil rights verdicts. Beck Decl. ¶¶2(d) & (e). Mr. Galipo's track record of obtaining very large verdicts is a reputation factor relevant to calculating a reasonably hourly rate so that what Mr. Galipo represents as his hourly rate is not transferable to an attorney who, albeit experienced in years, does not share that reputation.

If the Court chooses to consider the result obtained in calculating the hourly rate before determine the lodestar figure, Padilla directs the Court to the discussion below concerning the Fifth Issue.

**THIRD ISSUE:   <u>ARE THE HOURS CLAIMED BY PLAINTIFF'S COUNSEL REASONABLY EXPENDED?</u>**

*Plaintiff's Position:*

The defense has isolated and identified 16 entries in Beck's timekeeping records for the 2009-2015 life of this case which they challenge as (1) not billable at an attorney's rates, (2) duplicate or vague, and (3) unreasonably billed. The appended February 2, 2015 billing compilation addresses each contention, either by removing it completely or reducing the time to arrive at an amount consistent with the criticism for each of the 16 challenges. See Beck declaration paragraph

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

---

[2] The City of Los Angeles appealed the attorney's fees award. The matter is set for oral argument on Monday, February 9, 2015 at 9:30 a.m. in Courtroom

10.

Defendants principle criticisms lie not so much with Beck's timekeeping records, but for the time attorneys Garcia and Ellison billed Beck for their coverage as the jury was instructed and deliberated. Their declarations adequately support their billing and requested hourly rate.

As to Beck's billing records, it may readily be seen and understood that the time spent was in keeping with the demands of the litigation. Some hours are incurred proactively. Sometimes the time was spent toward the court's trial readiness requirements. Sometimes the time was spent in response to matters and issues the defense put forward. "Those who elect a militant defense in the face of a statute allowing attorney's fees if they are defeated must take into account the time and effort they extract from their opponents. It was ... [defendants] right to contest every aspect of this claim, but they cannot now disclaim the consequences of their actions." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986). See also, *Graham v. Sauk Prairie Police Comm.* 915 F.2d 1085, 1109 (7th Cir. 1990)(upholding plaintiff's requested hours noting posture adopted by the defendants increased the amount of time needed to protect plaintiff's rights); *Jacobs v. Mancuso*, 825 F.2d 559, 562 ((1st Cir. 1987)(defendants have only themselves to blame for prompting responses from the plaintiffs); *McGinnis v. Kentucky Fried Chicken*, 51 F.3d 805, 809 (9th Cir. 1994)(refusing to reduce award by district court for overstaffing and excessive hours agreeing with the district court's that the defendant's arguments "might have more weight if it had not found it necessary to spend considerably more money losing that its adversary spent winning.") Accordingly, it is not per se unreasonable for the prevailing party in a civil rights case to be awarded an

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

3, Pasadena, California. Ninth Circuit Case No. 13-55100 (consolidated with Case No. 13-55692).

amount of attorney's fees that exceeds the amount of money recovered by his or her client. *Gonzales v. Maywood, supra*, *4.

The defense bears the burden of producing a sufficiently cogent explanation and specific reasons for reductions of the lodestar. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1116 (9th Cir. 2008). Only exceptional circumstances will justify deviating from the lodestar calculation. *Quesada v. Thomason,* 850 F.2d 537 (9th Cir. 1988).

*Defendant's Position:*

A court's calculation of the number of hours to be compensated requires the court to consider whether, in light of the circumstances, the hours could reasonably have been billed to a private client. *Moreno v. City of Sacramento,* 534 F.3d 1106, 1111 (9th Cir. 2008). In calculating reasonably expended hours, the district court may exercise its discretion to impose what is commonly referred to as a "haircut," i.e., a small reduction in hours of no greater than 10 percent and may base this reduction on its exercise of discretion without a more specific explanation. *Moreno,* 534 F.3d at 1112. This would be appropriate where the district court is concerned about unnecessarily duplicative  or excessive work performed by a lawyer but cannot tell by a cursory review of an attorney's claimed hours which are unnecessarily duplicative or excessive. *Moreno,* 534 F.3d at 1112; *see also Chaudhry v. City of Los Angeles,* 751 F.3d 1096, 1111 (9th Cir. 2014), *cert. denied Angeles v. Chaudhry,* 2014 U.S. LEXIS 6174 (U.S., Oct. 6, 2014).

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley,* 461 U.S. at 433. "The district court also should exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley,* 461 U.S. at 434.Padilla submits that the following time entries in Mr. Beck's Detail Charges by Client are unreasonable for the noted reasons:

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

14.

Clerical Activities should not be billed at attorney rate:

| | | | |
|---|---|---|---|
| 09/15/11 | Client's filing fee payment arrived. | .10 | $70.00 |
| 01/23/12 | Got the POS's for the defs from the atty service | .10 | $70.00 |
| 04/20/12 | Copy service sent notice that County is after his meds. | .10 | $70.00 |
| 05/11/12 | Defs copy service sent notice they are after UCSB Student Health and North Coast Pathology records | .10 | $70.00 |
| 05/22/12 | Def counsel sent unavailability notice for the same time as my vacation. | .10 | $70.00 |
| 10/21/13 | Got stand by from Chris Lanz | .20 | $140.00 |
| 11/20/14 | Courier with chambers courtesy copies | .10 | $70.00 |

Duplicative Billing and vague entry:

| | | | |
|---|---|---|---|
| 06/05/12 | Mediator assigned Constance Komoroski | .20 | $140.00 |
| 06/07/12 | Mediator Komoroski assigned. | .40 | $280.00 |
| 06/08/12 | Recd defs proposed Protective Order and approved. Email to def to sign for me. | .50 | $350.00 |
| 06/12/12 | Protective order arrived and approved. | .30 | $210.00 |
| 07/24/12 | Correspondence with parents re the IME and harm it may cause the plaintiff's fragile psyche | .40 | $280.00 |
| 07/25/12 | Mom's e mails re the kids emotional condition and fretting over the IME | .30 | $210.00 |

Unreasonable to bill regarding pleading stricken by Court:

| | | | |
|---|---|---|---|
| 07/14/14 | Ct kicked back my non availability pleading | .10 | $70.00 |

Entry not recognizable as related to this case:

| | | |
|---|---|---|
| 01/07/12 | Drafted new check and close letter to Brian's | |

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

15.

| | | |
|---|---|---|
| payment designee . . . | 1.00 | $700.00 |

Unreasonable to bill regarding Court's request to collect belongings:

| 12/29/14 | Clerk asked us to come get the exhibits and other materials we left behind in the court-room. Made the arrangements. | .20 | $140.00 |
|---|---|---|---|

**FOURTH ISSUE: <u>ARE THE REQUESTED HOURLY RATES AND HOURS CLAIMED BY SHAFER FOR SUBSTITUTE ATTORNEYS MATTHEW GARCIA AND ELLEN ELLISON REASONABLE?</u>**

**I.    MATTHEW GARCIA.**

   A.    <u>Hourly Rate.</u>

      *Plaintiff's Position:*

Mr. Garcia's $350 hourly rate is established by the market rates applicable to counsel of his limited experience in the Burton, Sobel and Galipo declarations. The rate is reasonable and appropriate to counsel of Garcia's limited experience.

      *Defendant's Position:*

      It is shocking that Shafer seeks a lodestar for Matthew Garcia of $4,200 ($350 x 12 hours). Shafer fails to meet his burden to present evidence supporting the requested $350 hourly rate for Matthew Garcia. To inform and assist a district court in its exercise of discretion to determine a reasonable rate, the attorney applying for fees carries the burden to produce satisfactory evidence, in addition to his or her own affidavits, that the rates sought are in line with those "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum,* 465 U.S. at 895, n.11. Mr. Garcia's declaration is inadequate to establish a reasonable hourly rate. His declaration is supported by no other evidence.

      Even if the Court considers ordering attorney's fees for Mr. Garcia, none of the factors normally applicable to the calculation applies here. Mr. Garcia

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

16.

does not state that he was involved in this case in any way until the day before his appearance. Garcia Decl. ¶ 4. Mr. Garcia is not an attorney who took any risk by taking on a civil rights case. He was merely a one-day place holder for Mr. Beck. He had no investment in this case and did no complex work on the case. Complexity of legal work affects the determination of the reasonable rate. *Gonzalez v. City of Maywood,* 729 F.3d 1196, 1207 (9th Cir. 2013). During his literally minutes involved in work on this case on December 16, 2013, Mr. Garcia had been a licensed lawyer for about 14 months. Garcia Decl. ¶ 2. He has no track record of attorney's fees awards and no history of hourly rates awarded. Garcia Decl. ¶ 2. None of the *Kerr* factors bearing on reasonableness apply to his work. *See Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Mr. Beck more than likely paid him a flat fee of some sort. To order Padilla to pay Mr. Garcia the rate requested, or any rate amounting to more than a flat fee of $250 total (not hourly), would be unreasonable.

  B. <u>Hours Expended.</u>

   *Plaintiff's Position:*

Attorney Garcia's 12 hours billed to Shafer and Beck was portal to portal. This is in keeping with billing practices in all manner of law firms in the Los Angeles Metropolitan area. The time sought to be compensated is reasonable*.*

   *Defendant's Position:*

  Fee awards under 42 U.S.C. § 1988 were intended by Congress to be adequate to attract competent counsel but not to produce windfalls to attorneys. *City of Riverside v. Rivera,* 477 U.S. 561, 580, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986). In awarding and calculating attorney's fees, courts must ensure that attorneys are "compensated only for time *reasonably expended* on a case." *City of Riverside,* 477 U.S. at 580. How is Shafer's request for payment for <u>twelve hours</u> of Mr. Garcia's time not a windfall to plaintiff's counsel?

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

17.

Mr. Beck should have exercised billing judgment with respect to the hours Mr. Garcia sat in for him. Mr. Garcia was late to court on December 16, 2014 and the Court admonished him. Trial Tr., Day 6, 4:6-17. Courtroom proceedings on December 16, 2014 consisted of the reading of jury instructions from 9:08 a.m. to 9:31 a.m. (Trial Tr., Day 6, 4:2; 19:16) and addressing a note from the jury at 2:02 p.m. until 2:04 p.m. Trial Tr., Day 6, 19:17-25; 20:1-25; 21:1-9. The Court asked counsel to stay downtown and ordered Mr. Garcia not to return to Huntington Beach, but did not order Mr. Garcia to remain at the courthouse (Trial Tr., Day 6, 19:7-14). The Court mentioned the second floor attorney's lounge as a possible waiting place. In that lounge an attorney may use a quiet office to complete other work. Mr. Garcia's hours on "jury watch" are not reasonable. *See Jordan v. City of Cleveland,* 464 F.3d 584, 602 (6th Cir. 2006).

In addition to seeking attorney's fees for twelve hours of Mr. Garcia's time, when court proceedings on December 16, 2014 took a total of <u>25 minutes</u>, Mr. Beck also seeks payment for one half hour of his time in communication with Mr. Garcia. See Beck Detail Charges, 12/16/14.

**II. ELLEN ELLISON.**

A.     <u>Hourly Rate.</u>

*Plaintiff's Position:*

Attorney Ellison's $600 hourly rate she asks be applied is supported by the Burton, Sobel and Galipo declarations as well as her own.   The hourly is consistent with counsel of her experience and length thereof in the Los Angeles legal community representing plaintiffs in police misconduct litigation. The rate sought to be compensated is reasonable.

*Defendant's Position:*

Just as with Mr. Garcia, it is shocking that Shafer seeks a lodestar of $4,920 for Ms. Ellison ($600 x 8.2 hours). Padilla incorporates here his argument against an award of attorney's fees to Shafer for Mr. Garcia. Shafer

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

18.

fails to carry his burden to present evidence sufficient to support Ms. Ellison's request for an hourly rate of $600. As with Mr. Garcia, Shafer fails to present evidence beyond Ms. Ellison's own declaration.

Also, as with Mr. Garcia, Ms. Ellison had no connection to this case whatsoever until Mr. Beck asked her to stand by for him on December 17, 2014. Ms. Ellison herself stated that she had not seen anything in the case. Trial Tr., Day 7, 5:8-16. None of the *Kerr* factors bearing on reasonableness apply to her work. *See Kerr,* 526 F.2d at 70.

Recent circumstances hurting Ms. Ellison's reputation do not support the fee she requests. The California State Bar website indicates that on July 9, 2014, Ms. Ellison was suspended from the practice of law for 90 days. Ms. Ellison stipulated to two counts of misconduct related to her client trust account. This was Ms. Ellison's second record of discipline.  She was placed on probation for three years and therefore was on probation on December 17, 2014, the day she was present in court in this case.

Prior to her most recent license suspension, as reported in *Gonzalez v. City of Maywood,* 729 F.3d 1196 (9th Cir. 2013), Ms. Ellison sought an attorney's fee award herself at a rate of $550 an hour. In calculating a reasonable rate for Ms. Ellison, the district court pointed out that in a sworn declaration accompanying a motion she filed in the case, Ellison computed her fee based on a $300 an hour rate. On appeal, Ellison challenged the district court's reliance on the $300 an hour rate, claiming that the related motion did not involve research or skill. *Gonzalez,* 729 F.3d at 1207 n.8. The Ninth Circuit concluded that Ms. Ellison's declaration representing her hourly wage to be $300 undermined the credibility of her later declaration filed with her fee application seeking attorney's fees at a $550 an hour rate. *Id.* at 1208. Ms. Ellison states that she was ultimately awarded $415 an hour in that case. Ellison Decl. ¶ 4. However the court's order indicates the rate awarded by the district court was $412.50.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

*Camarillo v. City of Maywood,* Case No. CV07-03469 ODW (SHx) (C.D. Cal.) Order Granting Plaintiff's Motion for Award of Attorney's Fees (Dkt. No. 315).[3]

Ellison's day on "jury watch" in this case required her to have no knowledge of the case, to have reviewed "nothing," to do no research, make no motions, present no argument, examine no witnesses, or do any other attorney work except be present for one jury question and for the verdict. To order Padilla to pay Shafer the rate requested, or any rate amounting to more than a flat fee of $250 total (not hourly), would be unreasonable.

    B.   <u>Hours Expended.</u>

*Plaintiff's Position:*

Attorney Ellison's 8.2 hours billed to Shafer and Beck was portal to portal. This is in keeping with billing practices in all manner of law firms in the Los Angeles metropolitan area. The time sought to be compensated is reasonable.

*Defendant's Position:*

Hours may be reduced where the hours allegedly expended are excessive or otherwise unnecessary. *Contreras v. City of Los Angeles,* 2:11-cv-1480-SVW-SH, 2013 U.S. Dist. LEXIS 49412, *12 (C.D. Cal. March 28, 2013) (citing *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986).; According to the California State Bar website, Ms. Ellison's office address is 3435 Wilshire Blvd. #2700, Los Angeles. According to Google Maps, this location is 4.0 miles from the federal courthouse at 312 N. Spring St. The Court did not order the attorneys to remain in the courthouse during jury deliberations. Ms. Ellison was free to be at her office, within minutes of the courthouse, where she could have been working. Her hours on "jury watch" are not reasonable. *See Jordan v. City of Cleveland,* 464 F.3d 584, 602 (6th Cir. 2006).

_____

[3] The district court's order on attorney's fees post-remand from the Ninth Circuit has not issued. The motion for attorney's fees stood submitted on

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

Padilla objects to the third full paragraph of Ms. Ellison's declaration, which contains hearsay.

Ms. Ellison was not even needed in court on December 17, 2014 until roughly 1:00 p.m. She was present in court for on-the-record proceedings for a total of 23 minutes. Trial Tr., Day 7, 4:1- 9:23; 9:24 – 15:13. The jury trial ended at 2:55 p.m. that day. Trial Tr., Day 7, 15:13.  On December 17, 2014, counsel was needed in court for the first time at 1:25 p.m. to address a jury note. That event ended at 1:35 p.m. Counsel returned to the courtroom at 2:42 p.m. until 2:55 p.m. for the reading of the jury's verdict. Ms. Ellison declares that she explained the events of the day to Shafer however there were no events to explain until 1:35 p.m. Ms. Ellison, given the proximity of her office to the courthouse, certainly could have been in her office working on other matters rather than billing the entire day. Her application for a lodestar of $4,920.00 (8.2 hours x $600/hour) is patently unreasonable. Mr. Beck also seeks payment for 4/10 of an hour of his time in communication with Ms. Ellison. See Beck Detail Charges, 12/17/14.

"Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. 'In the private sector, "billing judgment" is an important component in fee setting.'" *Hensley,* 461 U.S. at 434 (quoting *Copeland v. Marshall,* 205 U.S. App. D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original). It would be pure windfall for Shafer to receive almost $10,000 for two stand-in lawyers, serving no other role in this case, and present during 48 minutes of on-the-record courtroom proceedings over two days. The Court should deny Shafer's request for failure to carry his burden and

September 15, 2014. *Gonzalez v. City of Maywood,* CV07-03469-ODW (SHx) (C.D. Cal.)  (Dkt. No. 378).

21.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

because no lawyer would bill a private client in this way and no private client would stand for this type of billing.

**FIFTH ISSUE: SHOULD THE COURT ADJUST DOWNWARD THE DETERMINED REASONABLE HOURLY RATE OR, IN THE ALTERNATIVE, THE CALCULATED LODESTAR, BASED ON THE "RESULTS OBTAINED" FACTOR BEARING ON REASONABLENESS?**

*Joint Statement:* The parties agree that Shafer's excessive force claim, which he proved at trial, was "related" to his conspiracy, unlawful detention, unlawful arrest, violation of the First Amendment, and malicious prosecution claims, which he either dismissed or chose not to pursue prior to trial (conspiracy and unlawful detention) or failed to prove at trial (unlawful arrest, violation of the First Amendment, and malicious prosecution). All of these claims arose from the common core of facts associated with his arrest on October 4, 2009. *See McCown v. City of Fontana,* 565 F.3d 1097, 1103 (9th Cir. 2009).

*Plaintiff's Position:*

The defense wants to reduce Plaintiff's lodestar 70% arguing Shafer prevailed only on his excessive force claim, ignoring the essential fact that all of Shafer's claims arise from the same factual nexus and by that reason alone the kind of reduction demanded would be unreasonable.

"The district court erred because it misconstrued our precedents when it applied a strict two-step test–(1) are there common facts and (2) are there related legal theories–to determine the relatedness of claims. We do not apply a two-step test to determine how to reduce an award for limited success, but we have not adopted a similar test for relatedness. Echoing the Supreme Court's description of related-claim cases, we have said that related claims involve a common core of facts *or* are based on related legal

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

22.

theories.(citations). Often related claims involve both a common core of facts and related legal theories.(citation) However, contrary to the district court's understanding, we have not required commonality of both facts *and* law before concluding that unsuccessful and successful claims are related." *Webb v. Sloan,* 330 F.3d 1158, 1168(9th Cir.2003)

*Webb* notes that successful and unsuccessful claims are related if they "arose out of the same course of conduct" and true unrelated claims are "distinctly different both legally and factually." *Id.*, p. 1169.

Shafer's lawsuit had two causes of action each of which arose from the incident that brought the Plaintiff and deputy Padilla together in 2009. As the billing records demonstrate, there is no possible way to fission time dedicated only to the excessive force or punitive damages claims in any event. Discovery and depositions were not tailored to particular claims or theories. It applied to the case as a whole. Likewise, the trial was not partitioned into separate claims because the incident and claims all arose from one moment in time.

Once the lodestar figure is fixed, it may be adjusted upwards or downward by the court. Courts must determine whether "the Plaintiffs achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Ibid.* "*Hensley* indicates that the *degree* of the plaintiff's success in relation to other goals of the lawsuit is a factor critical to the determination of the size of a reasonable fee, not to eligibility for a fee award at all. "*Texas State Teachers Assn v. Garland Independent School District* 489 U.S. 782, 790 (1989), quoted with approval in *Farrar v. Hobby.* 506 U.S. 103, 114 (1992). "Where a Plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . ." *Hensley v. Eckerhart, supra,* 464 U.S. at 435.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

23.

Notwithstanding the fact that Shafer did not prevail on his First Amendment and malicious prosecution claims at trial, he prevailed on the biggest two, unreasonable force and a punitive damages finding. In the annals of 1983 police misconduct litigation this is a significant accomplishment and met the primary goals of the litigation. Analyzed by possible damages, the First Amendment claim return was speculative. The malicious prosecution claim had but $1500 in special damages which Shafer paid to his defense attorney. The "real" value in this case stemmed almost entirely from Padilla's resort to injuring force and the special damages stemming from those acts. The jury awarded Shafer every penny of the $45,000 medical expenses he incurred and an additional $75,000 in pain and suffering and found that Padilla acted maliciously in so doing, even if there was no monetary award. From that perspective, the results cannot be criticized as anything but hugely successful. "[I]t is clear that a litigant need not prevail on every claim in order to receive a full fee." *Gates v. Deukmejian,* 987 F.2d 1392, 1404 (9th Cir. 1992). *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991)("Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning. The County would have us scalpel out attorney's fees for every setback, no matter how temporary, regardless of its relationship to the ultimate disposition of the case. This makes little sense. Plaintiffs are entitled to compensation for unsuccessful motions during successful litigation." "A plaintiff who is unsuccessful at a stage of litigation that was a necessary step to her ultimate victory is entitled to attorneys fees even for the unsuccessful stage." *Romberg v. Nichols*, 953 F.2d 1152, 1164.

Nor is there merit to the argument that plaintiff got less than he asked the jury. The complaint sought damages "according to proof" and on that score,

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

24.

Shafer is fully vindicated. "The dispositive inquiry for section 1988 purposes, therefore, focuses upon the legal issues at stake, not upon the prayer for relief. It focuses upon the liability stage of the proceedings, not upon the damages stage. Thus, although the Rombergs obtained virtually no monetary success and although most of their allegations never reached trial, the jury's affirmative determination that the defendants violated the Rombergs' important civil rights is enough to render the Rombergs eligible for an award of fees. *See Ruggiero,* 928 F.2d at 564 ("Simply because the jury found that the Ruggieros did not establish their claims in all respects does nothing to lessen the significance, or importance, of the Ruggieros' success."). *Romberg v. Nichols*, 970 F.2d 512, 519 (9th Cir. 1992).

*Defendant's Position:*

The Supreme Court held in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C. § 1988." *Hensley,* 461 U.S. at 440. "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Hensley,* 461 U.S. at 434.The Court explained that where a plaintiff achieves only limited success in a lawsuit consisting of related claims, the district court "should award only that amount of fees that is reasonable in relation to the results obtained." *Id.* This is true even where a plaintiff obtains significant relief, where that relief is limited in comparison to the scope of the litigation as a whole. *Hensley,* 461 U.S. at 439-40.The district court has discretion in making this equitable judgment. *Hensley,* 461 U.S. at 437.

The Ninth Circuit held in *McCown v. City of Fontana,* 565 F.3d 1097 (9th Cir. 2009), "that attorney's fees awarded under 42 U.S.C. § 1988 **must be adjusted downward** where the plaintiff has obtained limited success on his

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

pleaded claims, and the result does not confer a meaningful public benefit." *McCown,* 565 F.3d at 1103 (emphasis added). In judging a plaintiff's level of success, a primary consideration of the district court should be **the amount of damages awarded as compared to the amount sought**. *McCown,* 565 F.3d at 1104 (citing *Farrar v. Hobby,* 506 U.S. 103, 114) (emphasis added).

The district court, in implementing its assessment regarding the extent of a plaintiff's success, i.e., the results obtained, may either adjust the reasonable hourly rate before determining the lodestar or may adjust the lodestar after it has been calculated. *Morales v. City of San Rafael,* 96 F.3d 359, 363-64, 364 n.9 (9th Cir. 1996). In the Ninth Circuit, adjusting the reasonable number of hours or reasonable hourly rate prior to determining the lodestar is preferred. *Morales,* 96 F.3d at 364 n.9.

Shafer had very limited success in this case. Shafer's complaint alleged two causes of action. These were violation of civil rights – unreasonable seizures, and conspiracy – against Padilla and Sheriff Bill Brown (first cause of action), and a *Monell* claim against Sheriff Brown and the County of Santa Barbara (second cause of action). Complaint (Dkt. No. 1). Shafer stipulated to dismiss Sheriff Brown from the case and an order doing so was filed on February 9, 2012. (Dkt. No. 11). Shafer stipulated to dismiss the *Monell* claim against the County of Santa Barbara and his conspiracy claim against Padilla and an order dismissing those claims was filed on December 17, 2012. (Dkt. No. 31). Prior to trial, during the parties' meet and confer regarding jury instructions, Shafer confirmed that he would not pursue his allegation that Padilla had unlawfully detained him. (Dkt. No. 128, 7:5- 25). Thus, Shafer went to trial on only one cause of action against one defendant and that cause of action was reduced to four alleged constitutional violations (unlawful arrest; violation of the First Amendment; excessive force; and malicious prosecution). Of those four alleged violations, Shafer prevailed on only one – excessive force. Significantly,

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

26.

Shafer lost on every alleged constitutional violation that required the jury to believe his testimony. His loss was enormously significant for that reason alone.

Shafer referred to this case as a routine "contempt of cop" case. Pl. Memo Cont. Fact and Law, p. 2. Shafer's position was that he had done nothing wrong, and that Padilla, in retaliation for Shafer's speech, used excessive force against a non-resistive Shafer and then to cover up his wrongdoing, fabricated probable cause for Shafer's arrest and prosecution. This was all alleged in paragraph six of his complaint. Shafer failed to prove almost every single factual allegation in that paragraph.  The jury found that Shafer had failed to prove seventy-five percent of the case he presented to them, which was already abbreviated from what he initially plead in his complaint.

Shafer's substantial lack of success can also be easily measured by looking to the monetary amount he sought versus what the jury awarded. The Supreme Court has "suggested that a comparison of damages awarded to damages sought is required." *McCown,* 565 F.3d at 1104. Shafer argued for $700,000 in non-economic, pain and suffering damages. Trial Tr., Day 5, 215:3-18. The jury awarded him $75,000, which is 10.7 percent of the amount $700,000 he sought.

"[Shafer's] victory clearly fell far short of his goal; therefore, it is unreasonable to grant his attorneys more than a comparable portion of the fees and costs they requested." *McCown,* 565 F.3d at 1104-05 (reversing and remanding award of attorney's fees because district court abused its discretion by failing to take into account plaintiff's limited success in determining a reasonable attorney's fees award where plaintiff sued city, city police department, and two individuals alleging violations of 42 U.S.C. § 1983, including wrongful detention, false arrest, and use of excessive force and settled single remaining claim, after other claims were dismissed on summary judgment, for $20,000). *See also Hall v. City of Fairfield,* No. 2:10-cv-0508

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

DAD 2014 U.S. Dist. LEXIS 44927, *54-65 (E.D. Cal. March 31, 2014) (40% downward adjustment to lodestar).

The Ninth Circuit has found that a district court properly exercised its discretion where it reduced the lodestar by 50% for lack of success. *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994). There, the plaintiff sought $5 million under 42 U.S.C. § 1983 from five defendant law enforcement officers and the county employing them for excessive force, and obtained a $25,000 judgment against one officer. The Ninth Circuit reasoned that the lodestar reduction was justified because however significant the relief obtained, it was limited in comparison to the scope of the litigation as a whole. *Harris v. Marhoefer,* 24 F.3d at 19. This is exactly the case here, where under the circumstances, either the reasonable hourly rate calculated by the Court, or the lodestar amount, should be reduced by 70 percent to reflect Shafer's the lack of success.

Such a reduction is appropriate here because, while the Court should consider whether, and to what extent, Shafer's suit benefitted the public, assessment of that factor here provides no reason not to impose the downward adjustment. "The public benefit of a suit must have enough of an impact to justify a fully compensatory fee award despite limited success on damages claims." *McCown,* 565 F.3d at 1105. To determine whether a suit has such an impact, the district court should consider whether the suit has caused a change in policy or a deterrent to widespread civil rights violations and "may also consider the public benefit of deterring unconstitutional conduct by law enforcement officials." *McCown*, 565 F.3d at 1105. Here, Shafer was lawfully arrested for resisting Padilla. Padilla's decision to take Shafer to the ground, with the necessary assistance of Deputy Lefemine, was entirely consistent with proper law enforcement practices and with countless decisions of the Ninth Circuit and district courts in the Ninth Circuit and Courts of Appeal and district courts in every other federal circuit. Shafer's success on his excessive force claim will

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

28.

have no positive impact on the public. No policy will change, no peace officer should be deterred from using force against a resisting subject to ensure officer safety and effectuate a lawful arrest, and Padilla cannot risk putting himself or any other peace officer at risk by hesitating to use reasonable force when needed in the exercise of his peace officer duties because of the jury's verdict in this case.

Shafer's result on his excessive force claim was a minor and partial success. This Court should therefore award only that amount of fees that is reasonable in relation to the results obtained. *Hensley,* 461 U.S. at 440. Here, the Court should adjust downward by 70%.

**SIXTH ISSUE: <u>WHAT COSTS OTHER THAN ATTORNEY'S FEES SHOULD BE AWARDED TO PLAINTIFF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 54(D) AND 42 U.S.C. § 1988?</u>**

*Joint Statement:* Federal Rule of Civil Procedure 54(d) provides that a prevailing party may apply to tax costs. Items that are taxable as costs are listed in Local Rule 54-3; *see also* U.S. District Court, Central District, Bill of Costs Handbook, *last rev.* Jan. 8, 2015.

A prevailing party may seek costs not allowed as taxable costs under Federal Rule of Civil Procedure 54 if otherwise authorized by statute. Under 42 U.S.C. § 1988, the Court may award Shafer, as part of the attorney's fees award, "those out-of-pocket expenses that 'would normally be charged to a fee paying client.'" *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1216 n.7 (9th Cir. 1986), *reh'g denied and opinion amended,* 808 F.2d 1373 (9th Cir. 1987)). Costs sought must be necessary and reasonable.

*Plaintiff's Position:*

The traditional authority for the recovery of statutory costs by the prevailing plaintiff under FRCP Rule 54(d) is 28 U.S.C. §1920. However,

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

29.

§1988 has been interpreted to authorize the recovery, as part of the reasonable attorney's fees awarded to the prevailing plaintiff, of a broad range of litigation expenses that exceed or are not included within statutory costs. *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C.Cir 1984) *cert denied*, 105 S.Ct. 3488 (1985)(Title VII); *Henry v. Webermeier*, 738 F.2d 188, 192 (7th Cir. 1984); *Palmigiano v. Harrahy*, 707 F.2d 636, 637 (1st Cir. 1983); *Dowell v. City of Apopka*, 698 F.2d 1181, 1188-92 (11th Cir. 1983); *Jones v. Diamond* 636 F.2d 1364, 1382 (5th Cir. 1981)(*en banc*); *Northcross v. Board of Education*, 611 F.2d 624, 639 (6th Cir. 1979), *cert denied* 447 U.S. 911 (1980).

Thus § 1988 has been construed to encompass the reimbursement for all reasonable out-of-pocket expenses that are normally charged separately to fee-paying clients and that are not part of the office overhead incorporated into the attorney's billing rates. *Int'l Woodworkers of America, AFL-CIO v. Donovan*, 792 F.2d 762, 767 (9th Cir. 1986). Plaintiff is entitled to recover these expenses as costs in the same manner fees are regarded as costs within the meaning of section 1988.

The Act [section 1988] seeks to shift the cost of the winning party's lawyer (in cases within the intended scope of the Act) to the losing party; and that costs includes the out-of-pocket expenses for which lawyers normally bill their clients separately, as well as fees for lawyer effort. The Act would fall short of its goal if it excluded those expenses. What is more, the line between fees and expenses is arbitrary. A lawyer's hourly billing rate includes many overhead expenses such as local telephone calls. It is impossible to believe that Congress would have wanted prevailing parties to get back their lawyer's local telephone expenses (invariably included in the hourly fee) but not their long-distance expenses (invariably billed

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

30.

separately); or to get back their secretarial expenses--which are included in overhead and therefore billed as part of the lawyer's hourly rate rather than separately--but not the expenses of word processing, often billed separately to the client.

*Henry v. Webermeier, supra* at p. 192:

Accordingly, postage, long distance, photocopying, transportation, tolls, travel, food, lodging, parking, LEXIS or Westlaw research, messengers, couriers, Fed Ex, programming and computer use, transcripts, maps and exhibits, express mail service have been declared recoverable costs under §1988 although not particularized by the federal cost statute. *Jane L. v. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995) applied this broad interpretation of § 1988: "[O]ut of pocket expenses incurred during litigation may be awarded as attorneys fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead but are normally billed to a private client, and (2) the expenses are reasonable."

"Under § 1988 Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to the fee paying client.' *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n. 7 (9th Cir. 1987); *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 30 (D.C. Cir. 1984), *cert denied*, 472 U.S. 1021 (1985), *overruled on other grounds, Save Our Cumberland Mountains, Inc., v. Hodel*, 857 F.2d 1516 (D.C.Cir. 1988)(en banc); *see also West Virginia Univ. Hosps., Inc., v. Casey*, 499 U.S. 83, 87-88 n.3 (1991). Thus reasonable expenses, thought greater than taxable costs, may be proper." *Harris v. Marhoefer*  24 F.3d 16 (9th Cir 1994)

"Whether the costs are taxable depends not so much on the nature of the items, but rather whether the item for which costs are sought was 'necessarily'

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

31.

obtained for use in the case.'" *United States v. Ernst & Whinney*, 557 F.Supp. 1152, 1156 (N.D. Ga. 1983). See also *Keith v. Volpe*, 644 F. Supp. 1317 (C.D. Cal. 1986), "Plaintiffs also seek reimbursement of $6,641.29 for out-of-pocket expenses.   These expenses include transcribing an administrative hearing, a next-day-delivery deposition surcharge, duplicating, mail, long distance telephone calls, travel mileage, and parking. . . . [I]t is current practice in Los Angeles to bill private clients separately for such expenses.   Thus, plaintiffs are entitled to reimbursement . . . 644 F. Supp. at 1326.

It is immaterial that the courts in *Int'l Woodworkers* and *Keith* were awarding fees under federal fee award statutes other than 42 U.S.C. § 1988.   The same standards for fee awards are generally applicable in all cases in which Congress has authorized an award of fees to the prevailing party.   *Hensley v. Eckerhart*, 461 U.S. 424, 433 n.7 (1983); *Keith*, *supra*, 644 F. Supp. at 1322.) By these reasons, Plaintiff requests the court make an award of $13,457.42 in costs pursuant to F.R.Civ.P. section 54(d)(1), and 42 U.S.C. § 1988.   These expenses were required and necessary to the litigation. *United Steelworkers v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).   This includes a variety of actual out of pocket expenses not often considered but paid out on behalf of clients and not expressly set forth in  28 U.S.C. §1920.

> "Even though not normally taxable as costs, out of pocket expenses incurred by an attorney which would normally be charged to a fee paying client are recoverable as attorney's fees under section 1988."
>
> *Chalmers v. City of Los Angeles,* 796 F.2d 1205, n.7 (9th Cir. 1986).

The expenses claimed are documented in the Summary of Hours, Rates and Costs.  (Exhibit C pages 1-17).

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

The declaration of plaintiff's counsel, together with the detailed disbursements in the Summary of Hours, Rates and Costs (Exhibit C) the costs and disbursements necessarily and reasonably incurred in connection with litigating this action, set forth costs and expenses ordinarily billed to hourly paying clients. Plaintiff therefore requests that all compensable costs and disbursements be included in the order made by the Court. The costs incurred in serving (and reserving) trial witnesses when the trial dates were changed for reasons not attributable to the plaintiff are taxable costs even if the witnesses never testified. This way the witnesses were under plaintiff's jurisdiction to testify in the event he decided he needed them at the trial and could enforce attendance if required.

*Defendant's Position:*

**Witness Fees.**

Federal Rule of Civil Procedure 54(d) provides that costs should be allowed to the prevailing party. Where, as here, neither party completely prevailed, the district court has broad discretion in apportioning and taxing costs. *Economics Laboratory., Inc. v. Donnolo,* 612 F.2d 405, 411 (9th Cir. 1979); *Gorelangton v. Reno,* 638 F.Supp. 1426, 1434 (D. Nev. 1986).

The types of costs that can be taxed in favor of the prevailing party are set by statute. These include fees and disbursements for witnesses. 28 U.S.C. § 1920(3). A witness in attendance at a United States court shall be paid an attendance fee of $40 per day for each day's attendance. 28 U.S.C. § 1821(a)(1), (b); *see also* Local Rule 54-3.6. The witness fee is a recoverable cost where witnesses are not actually present in the courtroom as long as the witnesses have been "summoned and are in necessary attendance on the court, in readiness to testify." *Hurtado v. United States,* 410 U.S. 578, 584, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973). "To be taxable as costs, the witness's testimony must be material to an issue tried and reasonably necessary to its disposition." *Birkes v. Tillamook*

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

33.

*County,* 09-CV-1084-AC, 2013 U.S. Dist. LEXIS 29830, *10 (D. Or. March 4, 2013) (denying witness fees where witness not called at trial and court deemed witness's testimony to be offered was duplicative and unnecessary).

Padilla objects to witness fees sought where Shafer's counsel apparently indiscriminately subpoenaed witnesses for trial rather than making a good faith and reasonable judgment to call those witnesses to be available to testify. *See Lam Quy v. Air American, Inc.,* 667 F.2d 1059, 1065 (D.C. Cir. 1981). Padilla specifically requests that the Court deny Shafer's request for witness fees listed as paid to the following witnesses who did not appear or testify at trial:

1.    Mark Allen, Ph.D.: Mr. Beck's detail charges indicate that Dr. Allen returned his witness fee. (Beck Detail charges: 11/22/14 "Dr. Allen ack his trial subp and sent back wit fee.")

2.    Monica Micon, M.D.: Mr. Beck's detail charges indicate that on 11/07/14 "Dr. Micon called to ask for transportation as she does not drive in the city. Says she only read his xray file."

3.    Guddal, M.D.: Mr. Beck's detail charges dated 11/17/14 state that "Dr Guddal's clinic wrote asking to back off the subpoena."

4.    C. Baser, Ph.D.. Dr. Baser was a therapist who saw Shafer one time only.

5.    Thomas Bell. Mr. Bell was a therapist who saw Shafer about three times.

6.    Rofel Aleazar and Peter Aziz were unlikely to provide any necessary evidence or testimony.

7.    Chris Lantz. Mr. Lantz lives in Hawaii and was likely never even served or given a witness fee. Mr. Beck's detail charges state on 12/4/14 "Discovered Lanz is living in HI."

8.    Neil Tomaneng, M.D. Dr. Tomaneng treated Shafer at the emergency room on October 1, 2011.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

34.

**Post-judgment interest on damages award.**

*Joint Statement:* The parties do not dispute that Shafer is entitled to post-judgment interest on the money judgment in this case from the date of entry of judgment pursuant to 28 U.S.C. § 1961; *see also Air Separation Inc. v. Underwriters at Lloyd's of London,* 45 F.3d 288, 289-90 (9th Cir. 1995). The method of calculating such interest is set forth at 28 U.S.C. § 1961(a) and (b).

**Pre-judgment interest on damages award.**

*Plaintiff's Contentions:*

Pre judgment interest is available to the plaintiff. Barnard v. Theobald, supra, p. 1078.

On remand, the district court may also wish to reconsider its decision to deny Charles prejudgment interest. For while the ultimate decision whether to award prejudgment interest lies "within the court's sound discretion, to be answered by balancing the equities," *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir. 1971), the court's stated reasons for denying prejudgment interest in this case appear to be questionable.

First, the district court seemed to suggest that prejudgment interest is not appropriate when applied to an award of non-economic damages. This is incorrect. We have held that prejudgment interest is an element of compensation, not a penalty. *See Schneider v. Cnty. of San Diego*, 285 F.3d 784, 789 (9th Cir. 2002) (explaining that prejudgment interest "serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress."). Non-economic damages awarded for a plaintiff's pain and suffering are "just as much an 'actual loss' (for which prejudgment interest is in order)" as

purely economic damages. *See Murphy v. City of Elko*, 976 F. Supp. 1359, 1364 (D. Nev. 1997). Thus, to the extent the district court denied prejudgment interest because it thought such interest is unavailable for non-economic damages, the district court abused its discretion.

Second, the district court refused to award prejudgment interest because the jury returned a general verdict that did not distinguish between past and future damages. Because the district court believed that interest should not be awarded with respect to future damages, the district court refused to grant interest on any portion of the award. On remand, the district court should consider the balance of the equities in making this determination, including whether it may be advisable to award prejudgment interest on a prorated portion of the award. For instance, the district judge may consider whether it is appropriate to award prejudgment interest for at least that portion of the award that was likely given to Charles in order to compensate him for his past pain and suffering and medical expenses.

*Defendant's Contentions:*

The Court should deny Shafer's request for prejudgment interest on the damages award. Shafer asserts entitlement to pre-judgment interest on the damages award of $120,000. Shafer cites *Golden State Transit Corp. v. Los Angeles,* 773 F.Supp. 204 (C.D. Cal. 1991) ("*Golden State*"). In that case, the main action of the City of Los Angeles giving rise to the litigation was the City's refusal to renew Golden State's taxicab franchise until Golden State settled an ongoing labor dispute with its drivers. *Golden State,* 773 F.Supp. at 205. Golden State sued, alleging, among other things, violation of its due process and equal protection rights.  Golden State prevailed, was awarded compensatory damages, and sought prejudgment interest.

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

36.

In *Golden State*, the district court analyzed whether prejudgment interest was available. The court, finding that neither 42 U.S.C. § 1983 nor 42 U.S.C. § 1988 mention a prejudgment interest award, and that this was a question of first impression for a court in the Ninth Circuit, conducted an extensive analysis of the question. *Id.* at 208. Ultimately, the court concluded that it is within the court's discretion to award a plaintiff prejudgment interest in a case brought under 42 U.S.C. § 1983. *Id.* at 212. The purpose of prejudgment interest is to compensate the plaintiff, not to punish the defendant. *Id.* at 215. In deciding whether or not to award prejudgment interest, the question is one of fairness and to be answered by balancing the equities. *Id.* at 214. As for a rate, the court found the 52-week Treasury bill rate, compounded annually, using an annual average of the monthly rates, to be the appropriate rate at which to award prejudgment interest. *Id.* at 218.

Other cases relied on by Shafer are inapposite to the circumstances here. *Schneider v. County of San Diego,* 285 F.3d 784 (9th Cir. 2002) is a case involving a takings claim. It concerns an award of prejudgment interest under the Just Compensation Claus of the Fifth Amendment of the U.S. Constitution where a taking of property without compensation results in an ascertainable economic loss. *Schneider*, 285 F.3d at 789-90. In *Hall v. Ochs,* 817 F.2d 920 (1st Cir. 1987), state tort and § 1983 claims were "completely overlapping." *Hall,* 817 F.2d at 926. Massachusetts law provided for prejudgment interest on the state tort claims, however "under § 1983 plaintiffs get only the interest the jury awards." *Id.* In *DeLaCruz v. Pruitt,* 590 F.Supp. 1296 (N.D. Ind. 1984), the court applied its discretion, based on equitable principles, to award prejudgment interest on lost wages because the plaintiff was wrongfully discharged from her job and thus was deprived of an ascertainable amount of money and use of that money. *DeLaCruz,* 590 F.Supp. at 1309. In *Gorelangton v. City of Reno,* 638 F.Supp. 1426 (D. Nev. 1986), the district court mentions in its factual summary

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

37.

that prejudgment interest was included in an amended judgment but the award of prejudgment interest is not at issue and not discussed by the court. *Gorelangton,* 638 F.Supp. at 1433.

In this case, prejudgment interest should be denied. First, as to Shafer's non-economic damages, he was not deprived of an ascertainable amount of money through the use of excessive force. There is no loss for which to compensate him. The economic damages awarded to Shafer amounted to $45,000. At trial, his mother testified that an insurance company paid $23,690 of Shafer's medical bills (Trial Tr., Day 3, 44:20-22) and his parents paid $17,000 (Trial Tr., Day 3, 44:13-19. No testimony was offered regarding amounts spent on medical care at any given time, however the evidence did show that Shafer saw one physician the day after his arrest and did not see any physician for his alleged emotional injuries until October 1, 2011. His medical costs were then spread over a period of time from October 1, 2011 to November 20, 2014. Trial Tr., Day 3, 74:25, 75:1-8. Shafer presented no evidence at trial regarding when his parents paid any medical bills. Therefore, it would be impossible for the Court to assess prejudgment interest.


Dated: February 2, 2015          THE BECK LAW FIRM


                                 By: /S/ - Thomas E. Beck
                                 Thomas E. Beck, Esq.
                                 Attorney for Plaintiff JAY SHAFER


Dated: February 2, 2015          MICHAEL C. GHIZZONI
                                 COUNTY COUNSEL


                                 By: /S/ - Mary Pat Barry
                                 Mary Pat Barry
                                 Sr. Deputy County Counsel
                                 Attorneys for Defendant
                                 DEPUTY FREDDY PADILLA

COUNTY COUNSEL
County of Santa Barbara
105 East Anapamu Street
Santa Barbara, CA 93101
(805) 568-2950

38.